# Schloss & Kahn *v.* Brightman, *et al.*

### Bill to Declare a Trust, and for an Accounting.

(Decided November 11, 1915. Rehearing denied January 20, 1916.
70 South. 670.)

1. **Equity; Bill; Construction.**—A bill in equity is construed most strongly against the pleader.

2. **Trusts; Sales by Mortgagees, Trustees, etc.; Fraud; Relief.**—Where a creditor of a decedent filed a bill against his devisee and executrix, alleging that in his life time decedent mortgaged certain described property and executed second mortgages on other property, that the devisee and executrix purchased said mortgages, and as an individual and as the transferee thereof she sold the mortgaged property under the power of sale contained in said mortgages, and purchased at said sale at a price greatly less than the real value, the bill in no way alleging any irregularity or unfairness in said sales, or that the purchase was made out of funds of the estate of decedent, and seeking to have such devisee and executrix declared a trustee of such property mortgaged, and also seeking to have the property sold to pay decedent's indebtedness to complainant, stated no ground for equitable relief, either on the ground of actual or constructive fraud; for, in the absence of any violation of the respondent's fiduciary relation, the mere fact that the property did not bring its full value was not sufficient of itself to invalidate or affect the sale.

3. **Mortgages; Sale; Inadequacy of Price; Fraud; Presumption.**—Gross inadequacy of price paid by a purchaser at a sale under a mortgage will not of itself, even in a court of equity, invalidate or affect the sale unless it is such as to raise a presumption of fraud.

4. **Same.**—Where the inadequacy of the price obtained at a foreclosure sale is so glaring and gross as to shock the understanding and conscience of an honest man, it is sufficient of itself to raise a presumption of fraud, and may authorize the setting aside of the sale.

APPEAL from Lowndes Chancery Court.

Heard before Hon. W. R. CHAPMAN.

Bill by Schloss & Kahn against Laura K. Brightman and others to declare respondent Brightman a trustee, for an accounting and sale of the land to pay an indebtedness due by her decedent. Decree for respondent, and complainant appeals. Affirmed.

POWELL & HAMILTON, for appellant. RUSHTON, WILLIAMS & CRENSHAW, and G. F. MERTINS, for appellee.

GARDNER, J.—Appellants, Schloss & Kahn, simple contract creditors of one W. T. Brightman, now deceased, filed this bill against the respondent Laura K. Brightman and the respondent Fourth National Bank, seeking as its prime purpose to have the respondent Laura K. Brightman decreed a trustee of certain lands which she claims to have sold under a mortgage executed by said W. T. Brightman in his lifetime, which are made exhibits to the bill, and that she be held to account, as such trustee, for the said lands and the rents and profits derived therefrom, and that said lands be sold for the purpose of paying the indebtedness due by said Brightman, deceased. From the conclusion we have reached the respondent bank may be here laid out of view.

It is alleged in the bill that said W. T. Brightman died on June 3, 1909, a resident of Lowndes county, Ala., leaving a last will and testament which was subsequently and duly and legally admitted to probate in said county. A copy of said will is made Exhibit A to the bill, and by the terms thereof Laura K. Brightman and respondent C. P. Rogers, Jr., and W. L. C. Haigler were named as executors, and they qualified as such. The respondent Laura K. Brightman is the widow of said W. T. Brightman, deceased.

The bill further shows that in March, 1909, the said W. T. Brightman was indebted to the complainants in the sum of $3,-304.15, evidenced by four promissory notes, and was further indebted by open account in the sum of $62.06, that all of said accounts are due and unpaid, and that said claims have been duly filed against the said estate.

The fourth paragraph of the bill contains a description of the real estate of which said Brightman died seised and possessed.

In the fifth paragraph it is shown that the said Brightman executed a number of mortgages on said real estate to separate persons and firms, which said mortgages are made exhibits to the bill. The first of said mortgages was executed by said Brightman to one Tyson upon the real estate known as the "Tyson Swamp plantation," containing about 1,680 acres of land in Lowndes county, and executed January 5, 1897, a copy of which is Exhibit B.

Exhibit C to the bill is a copy of a mortgage by said Brightman and wife to one Bell upon the above-described "Tyson Swamp plantation" and other real estate in Lowndes county.

Other mortgages are referred to in said fifth paragraph, copies of which are made exhibits to the bill, but a further reference in detail is deemed unnecessary. Some of them, as above shown, are second mortgages as to some of the property embraced therein.

The bill further avers that after the death of the said Brightman, and after said respondent Laura K. Brightman became executrix, she purchased and had transferred to her each of said mortgages herein referred to, and that at the time of the death of said Brightman he had paid a large portion of the indebtedness for which said mortgages were executed, and that said indebtedness at the time of the transfer was less than the sum of $20,000. It is further alleged that the said Laura K. Brightman sold the property described in each of said mortgages under the power of sale contained therein and became the purchaser at said sales, and that the property was sold at a price greatly less than its real value. Some of the foreclosure deeds executed by the auctioneer to said respondent Laura K. Brightman are made exhibits to the bill also, the recitals of which disclose foreclosures in full accordance with the terms of the mortgages, and that public sale was had after due notice given as required by the mortgages, and that said Laura K. Brightman was the highest and best bidder at said sale. Some of said mortgages seem to have required that notice of said sale be given by publication for three weeks in a newspaper. The regularity of said sales is in no manner questioned by the bill. There is no averment or pretense that any of the funds of the estate were used by said respondent in the purchase of said mortgages, and it is therefore to be assumed that said respondent purchased the same with her own means. Nor is there any averment or insistence that sufficient funds or means of the estate came into the hands of the respondent with which the indebtedness could have been paid.

(1, 2) Construing the bill most strongly against the pleader, the purchases made by said respondent were made in strict accordance with the terms of the power of sale contained in the mortgage, and the sales were very fairly and openly conducted, and her bid was the last and best and highest bid received. The only averments in the bill in any way impugning the transaction is the averment that the amount for which the property sold was much less than its reasonable value. There is no aver-

[Schloss & Kahn v. Brightman, et al.]

ment of fraud or unfair dealing with respect to the foreclosure of these mortgages and the purchase by said respondent, except as above indicated. The insistence is made by counsel for appellant (and such appears to be the theory upon which the bill was filed) that, as the said respondent Laura K. Brightman was at the time of the purchase of said mortgages and the foreclosure thereof the executrix of the estate of her deceased husband, she was thereby incapacitated to become the purchaser of said property at any sum less than its full value. While the bill does not in so many words seek to have the foreclosure sale set aside, yet, in seeking to have the said respondent, the purchaser at said sale, held as a trustee and the lands resold, such is therefore in reality the result that is sought.

By the will, which is an exhibit to the bill, it appears that the said Laura K. Brightman was given all the property of said estate during her lifetime, or widowhood, and that it was further provided that at her death, or the termination of her widowhood, the property should then be divided equally among the children of said marriage. It thus appears that she is the executrix with an interest in the estate.

In one of the earliest cases in this state, in discussing the purchase by an administrator at his own sale, the writer of the opinion had this to say: "I understand the rule to be founded upon the idea that the purchase is a fraud in law upon the rights of those interested in the estate. I consider it as most congenial with the condition of society and the character of human dealings to narrow the catalogue of legal frauds to as few as practicable, and to declare no act as fraudulent per se where a wise and just policy does not imperiously demand it."—*Brannan v. Oliver*, 2 Stew. 47, 19 Am. Dec. 39.

In *Bank of Wetumpka v. Walkley*, 169 Ala. 648, 53 South. 830, this court said: "It has been long and well settled by the decisions of this court that a purchase by a trustee for his own benefit at a sale of the trust property is voidable at the option of the cestui que trust, and will be set aside on timely application made for that purpose; and in the application of this rule it is unimportant whether the purchase be made directly or indirectly, in person or through an intermediary, who subsequently reconveys to the trustee, and without regard to the fairness of the purchase. * * * The authorities recognize and sanction but a single exception to this rule; that is, that executors

and administrators, who have an interest in the property sold, may purchase at a sale of the property of the estate, provided there is no unfairness, and property is exposed for sale under the ordinary mode, and under such circumstances as will command the best price."

See, also, *Cottingham v. Moore,* 128 Ala. 209, 30 South. 784; *Calloway v. Gilmer,* 36 Ala. 354; *Foxworth v. White,* 72 Ala. 224; *Randolph v. Vails,* 180 Ala. 82, 60 South. 159.

The case of *Penny v. Jackson,* 85 Ala. 67, 4 South. 720, is of peculiar interest in this connection, and we therefore take therefrom the following quotation: "It is unquestionable that a trustee is required to act, in all matters pertaining to the trust, with the utmost good faith, and solely for the benefit of the beneficiary; and he will not be allowed to deal with the subject of the trust, so as to gain, directly, or indirectly, any advantage to himself. An advantage so gained will be construed as inuring to the benefit of the cestui que trust. Courts of equity will raise a constructive trust out of the fiduciary relation, when by virtue thereof the trustee acquires title to the property, under such circumstances that he should not in equity and good conscience hold and enjoy the beneficial interest thereof. The efficient administration of justice between the parties is the purpose of impressing the trust, and fraud, actual or constructive, as considered in equity, is an essential element. The existence of a fiduciary relation is not of itself sufficient. There must be an act or transaction in violation of some duty owed to another whose beneficial ownership is thereby offended—some use of the fiduciary functions to obtain an advantage inconsistent with the obligations of his position, which equity stamps as constructive fraud. Says Mr. Pomeroy: 'An exhaustive analysis would show, I think, that all instances of constructive trusts, so called, may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source.' —2 Pom. Eq. Jur. §§ 10, 44; Perry on Trusts, § 166. * * * The fact that Mrs. Jackson was executrix did not deprive her of the right to purchase the property, nor render her purchase voidable. At an early day the principle was settled that a personal representative may purchase property at a sale made by himself under an order of the probate court if he has an interest in the property, and that such purchase will be sustained, if the sale is made in the ordinary mode, and there is an absence of

all unfairness.—*Brannan v. Oliver*, 2 Stew. 47 [19 Am. Dec. 49]. As respects executors and administrators, this rule has never been departed from. * * * So far as appears from the proceedings, Mrs. Jackson did no act by directing or interfering with the sale, or otherwise, which was in violation of her duty as executrix, and did not use her relation or functions, as such, to gain any advantage to herself. She had the right to purchase for her own use and benefit, and her purchase will be sustained in the absence of fraud, either actual or constructive."

See, also, in this connection, *Markwell v. Markwell*, 157 Mo. 326, 57 S. W. 1078; 1 Jones, Mort. (6th Ed.) § 922.

The question therefore of importance in this case is whether or not the mere averment that the property embraced in the mortgages sold at the foreclosure sale for a sum greatly less than its reasonable value and purchased by the respondent Laura K. Brightman is sufficient to avoid said sale because of the fact that she was the executrix at the time, notwithstanding the fact that she was the devisee, and therefore interested in the estate. Many of the cases above referred to have reference to a sale made by the administrator or executrix as such. In the instant case the sale was not by the executrix, but by Laura K. Brightman as an individual and as the transferee of said mortgages. Being of interest in the estate, it cannot be insisted that the mere purchase by her of the mortgages with her own funds could in any wise create any presumption of fraud or unfairness. So far as the bill discloses, the purchase and transfer to her was entirely legitimate and free from any suspicion of fraud, and therefore she may be treated as if she were merely a purchaser at the sale had by the mortgagee himself. It is not questioned in the bill that the property was sold at public outcry, after due notice given, and that she was the highest bidder at the sale. While it is alleged that the property sold for a sum much less than its reasonable value, yet there is no intimation that the sale was not had for the highest price obtainable, or that anything was done by respondent that would have any tendency to depreciate the price. It is nowhere shown that there had been any act or transaction of respondent in this respect in violation of any duty she owed any one as executrix or that she has used her fiduciary functions to obtain an advantage inconsistent with the obligations of her position. For aught that appears to the contrary, the complainant had full knowledge or notice of said

sale and was present thereat. So far as appears from the bill, to quote the language of our cases: "There was no unfairness and the property was exposed to sale in the ordinary mode and under such circumstances as would command the best price."

(3) The attack of the complainants upon the transactions must rest upon fraud, either actual or constructive. The mere fact that the property did not bring its full value is not sufficient of itself to invalidate or affect the sale. As was said in *Harmon v. Dothan Nat. Bank,* 186 Ala. 360, 64 South. 621: "But it has been repeatedly held by this court, and must now be regarded as settled law, that gross inadequacy of the price paid by the purchaser at a foreclosure sale will not of itself, even in a court of equity, invalidate or affect the sale."—*Ward v. Ward,* 108 Ala. 278, 19 South. 354; *Windes v. Russell,* 150 Ala. 625, 43 South. 788; *Hunter v. Mellen,* 127 Ala. 343, 28 South. 468.

(4) While it has been held that there is an exception to this general rule, which is that, when the inadequacy is so glaring and gross as to at once shock the understanding and conscience of an honest man, it will of itself be sufficient to raise a presumption of fraud, and may therefore authorize the setting aside of the sale (*Simmons v. Sharp,* 138 Ala. 454, 35 South. 415; 27 Cyc. 715; 92 Am. St. Rep. 584, N. B.), yet there is nothing in this bill indicating in the least any application of such exception, and therefore the same needs no consideration here. As before stated, some of the property, notably the Tyson Swamp plantation, embraced in one of the mortgages and other portions of the real estate were likewise mortgaged the second time. It may be that this had its influence upon any prospective purchasers at said sale, as well as the further fact that the amount involved was rather large. Under the power of sale in said mortgages the said respondent was authorized to become the purchaser. Everything in connection with the said foreclosure, in so far as appears from this bill, was entirely open and fair, and we are persuaded that the averments of the bill are insufficient to fasten upon the transaction a constructive fraud and thereby nullify the same. A case in point is that of *Fleming v. McCutcheon,* 85 Minn. 152, 88 N. W. 433, which fully sustains the conclusion we have here reached.

There were numerous assignments of demurrers to the bill, and also some averments which we have not here treated, for the reason that it is made quite clear that the question we have

[Bidwell v. Johnson, et al.]

here discussed is the one of prime importance in this case. It is further emphasized by the fact that counsel for the appellant who prepared the bill have so considered it and have discussed this feature only in their brief. We have considered it unnecessary, therefore, to pass an opinion upon any other question. The conclusion reached justifies the chancellor in his decree sustaining the demurrer to the bill, and the same is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.