(130 So. 323)

**MARSH et al. v. ELBA BANK & TRUST CO. et al.**

**4 Div. 455.**

Supreme Court of Alabama.

June 26, 1930.

Rehearing Denied Oct. 30, 1930.
Further Rehearing Denied Dec. 11, 1930.

Wilkerson & Brannen, of Troy, W. M. Brunson, of Elba, and Huey & Huey, of Enterprise, for appellees.

P. B. Traweek, of Elba, for appellants.

**SAYRE, J.**

Eva C. Marsh, as next friend of her infant children, filed the bill in this cause to redeem a tract of land which had been mortgaged by her deceased husband. Tavner Marsh, the husband, died January 17, 1916. On January 25th, thereafter, the Elba Bank & Trust Company, acting in concert with a brother and brother-in-law of complainant next friend, disposed at private sale of live stock and farm equipment, also covered by the mortgage, for the sum of $1,600. The land was subject to a prior mortgage held by George M. Forman and, by way of private sale also, the equity of redemption was conveyed by the Elba Bank to J. A. Marsh on February 3, 1916, by quitclaim "without any warranty whatever on the part of the Elba Bank and Trust Company as to title, quantity or quality." On the same day complainant, who had joined her husband in executing the mortgage, delivered to Marsh a quitclaim of her interest in the land and personal property described in the mortgage on a recited consideration of "one dollar and other valuable considerations." These dispositions of the real and personal property of deceased mortgagor were made in execution of the power of sale contained in the mortgage to the Elba Bank, and the instruments evidencing them were filed for record in the office of the judge of probate March 1, 1918.

Complainant's bill to redeem on behalf of her children by the mortgagor was filed May 15, 1919. This appeal brings under review the decree of February 28, 1929, dismissing the bill. In her bill, original and as more than once amended, complainant averred the history of the foreclosure, that she was without experience in matters of business, that she was sick and in great distress by reason of the then recent death of her husband, the mortgagor, after a prolonged illness, and that the agent of the bank in charge of the foreclosure and J. A. Marsh, her father-in-law, to whom the bank executed its quitclaim by way of foreclosing the mortgage, colluded to procure her execution of the quitclaim to Marsh with the purpose to obtain an unfair and unconscientious advantage of the infant heirs at law of deceased mortgagor who were then incapable of making deeds or transacting business. These and other averments of similar character reflect some light on the bill of complaint, but its equity and the facts necessary to be proved are found in the averment that "it was the evident purpose and scheme of the said Elba Bank and Trust Company and the said J. A. Marsh to obtain * * * for the said J. A. Marsh the said lands and personal property at a most inadequate price, and also to forever cut off and defeat, by the said pretended foreclosure, their [complainant children, heirs-at-law of Tavner Marsh, deceased] right of redemption in said lands * * * and for an inadequate consideration take over all of the said property," etc.

"In this state it is settled that a mortgagee who has exercised a power to sell at *private sale* is chargeable in equity upon a bill for accounting and redemption, with the reasonable value of the property sold, regardless of the price actually received." Harmon v. Dothan Nat. Bank, 186 Ala: 364, 64 So. 621, 623. And in Zadek v. Burnett, 176 Ala. 89, 57 So. 447, 450, this court said of a mortgagee, acting under a power to sell at public or private sale: "In selling the property at private sale for the satisfaction of his mortgage debt, it was his duty to sell it at a fair and reasonable valuation, and failing to do so he became liable to the mortgagor for such failure." In the last-named case this court summarized our decisions as follows: The effect of the authorities is to hold a mortgagee who sells at private sale responsible and accountable for at least the fair and reasonable value of the property, regardless of the price actually received by him." Other cases of ours on this subject are Johnson v. Selden, 140 Ala. 418, 37 So. 249, 103 Am. St. Rep. 49, and Brock v. Headen, 13 Ala. 370.

The question then of prime importance presented by the record is whether in foreclos-

ing its mortgage the bank of Elba achieved a fair and reasonable price for the land and personal property. A great volume of testimony was taken on this subject and has here received due consideration. Mortgagor's live stock and farm equipment were by the bank sold or caused to be sold for $1,600. We are unable to say that this price was so inadequate, unfair, or unreasonable as to call for an impeachment of the sale. But with respect to the price at which the farm was sold our conclusion is that the bank failed in its duty to the heirs at law of the deceased mortgagor. We do not find that the bank had any other purpose than to collect its debt expeditiously and with as little inconvenience to itself as possible; but we do find that in the accomplishment of that purpose it exercised too little regard for the interests of the infant heirs at law of the deceased mortgagor, complainants in the present case. However, in one particular the bank transgressed the right of the widow, who had an interest in the estate of her deceased husband, the mortgagor. At the time of his death the mortgagor was indebted also to the bank at New Brockton, and this indebtedness was secured by mortgages on crops to be grown in successive years and on live stock on the farm. In the way of a preliminary to the foreclosure of its mortgage, the bank of Elba purchased from the bank of New Brockton accounts which it held against mortgagor, Tavner Marsh, took an assignment of the mortgages held by it, and also a policy of life insurance, worth $1,803, which had been pledged by him to it, but which at the time was in the keeping of the insurance company from which deceased had obtained a loan of something less than $200. For these securities the bank of Elba paid to the bank of New Brockton the sum of $1,185, the amount of the indebtedness of deceased to it. This policy was by the bank of Elba transferred to J. A. Marsh at the price of its then present value. The history of the litigation at the end of which Eva C. Marsh recovered the money represented by this policy will be found stated in Marsh v. Elba Bank, 205 Ala. 425, 88 So. 423, where also many of the facts touching the present controversy do appear.

At the time of the foreclosure by the bank of Elba of its mortgage, the estate of the deceased mortgagor owed the bank, according to its statement, the sum of $4,475.22. The personal property sold by the bank of Elba under its power to foreclose realized $1,600. We are not disposed to deny the adequacy of the price thus credited on the mortgage debt of the deceased for the reason that a brother and a brother-in-law of the widow, now representing her children as next friend, took part in the valuations entering into the sale —this we say notwithstanding the fact that they were estimating the value of the property with a view to an arrangement, afterwards abandoned, by which one of them was to take over the farm for a term of years and pay its debts.

After allowing credit for $1,600, as heretofore stated, the bank of Elba, by way of foreclosure, sold the equity in the land to J. A. Marsh for $1,072.22. This equity along with the debt then due to George M. Forman, to wit, $4,295.11, constituting a prior lien, represented the value placed upon the land in the foreclosure proceeding, to wit, $5,367.33. Testimony as to the value of the land and its improvements at that time varied widely. Our judgment is that the farm property, with its improvements, was well worth $10,000, probably more, even at that time and notwithstanding the then recent inroad of the boll weevil. Thus it is made to appear that in order to collect its debt the bank sold the farm at private sale for, approximately, one-half its value. Of course, the purchaser must be charged with knowledge of this fact and, on the evidence, there can be no doubt that he knew it in fact. Equity will not permit a mortgagee, in a sense a trustee for the mortgagor, thus to exercise the power of private sale to the unreasonable and obvious disadvantage of his cestui que trust, the mortgagor. So then, the facts and the figures which we have stated left in the heirs at law of the deceased mortgagor the equity of redemption which by their bill in this cause they are seeking to exercise. They have that right, that equity (Butts v. Broughton, 72 Ala. 298), and are seeking to enforce it according to the rule of Harmon v. Dothan Nat. Bank and the other adjudications heretofore cited. See also 2 Jones on Mortgages (8th Ed.) § 1361.

J. A. Marsh, now deceased, conveyed a part of the land, the subject of controversy, 92 acres, to T. W. Marsh, to whom we shall hereafter refer as Walter Marsh, in August, 1922, and 145 acres to L. A. Boyd in March, 1918. Walter Marsh and Boyd are parties defendant in this cause. In December, 1922, Walter Marsh executed a mortgage on 173 acres—including 92 acres he had purchased from J. A. Marsh—to the defendant Federal Land Bank at New Orleans, the consideration for which, in part, was the payment to George M. Forman of the balance then due on his mortgage, to wit, $2,919.25. The Forman mortgage was then canceled of record. The total loan to Walter Marsh was $5,677.50.

There is no question as to any right of Eva C. Marsh, the widow. She, at the time of the alleged foreclosure, executed a quitclaim to J. A. Marsh. Nor is she a party to the bill in her own interest. She complains only as the next friend of her infant children.

The Elba Bank was careful in its quitclaim to J. A. Marsh, made by way of foreclosing its mortgage, to stipulate that its conveyance was "without any warranty whatever," and on our first consideration of this case we

followed Marsh v. Marsh, 215 Ala. 571, 112 So. 189, holding that purchasers from J. A. Marsh and subsequent purchasers tracing title back to him could not sustain their claims to be bona fide purchasers for value. Subsequently, however, the court in Gordon v. Ward (Ala. Sup.) 128 So. 217,[1] and McCollum v. Burton, 220 Ala. 629, 127 So. 224 decided that a grantee, other than the immediate grantee in such a conveyance, was not in virtue of his title so acquired charged with notice of secret equities which may have affected the parties to the original quitclaim. This last-stated principle makes it necessary to adjudicate the claim of L. A. Boyd and Walter Marsh that they were purchasers for value without notice of the equity affecting the foreclosure proceeding as between complainants and J. A. Marsh. both of whom have pleaded that they were such purchasers. As for the land bank, its answer and crossbill limit its claimed relief to a prayer for subrogation to the mortgage held by the Forman Company which it (the land bank) paid when making its loan to Walter Marsh.

As for the right of L. A. Boyd, it is clear on the evidence that he was a purchaser for value without notice of the equity now asserted by complainants. This conclusion results in the dismissal of complainant's bill as against him and leaves intact the land bank's lien, to the extent of the Forman mortgage, on that part of the land of Tavner Marsh, deceased, described in its mortgage. But the defense of bona fide purchaser is available to Walter Marsh to a limited extent only, for he concedes in his answer and in his testimony that he is still indebted to J. A. Marsh, or his estate, for a part of the agreed purchase money of the land sold to him by J. A. Marsh. To the extent of that balance of purchase money Walter Marsh cannot, of course, be considered as a purchaser for value without notice. Nor is the claim of these parties to protection as bona fide purchasers affected by the mere fact that they purchased since this suit was filed against the Elba Bank and J. A. Marsh, for there was no compliance on the part of complainants, or their next friend, with the statute of lis pendens, section 6877 et seq. of the Code.

■■ If both Boyd and Walter Marsh were chargeable with notice of the equity now asserted by complainants, the debt due by the mortgagor, now represented by his heirs, would, for the purposes of the redemption sought by complainants, be apportioned between them (Boyd and Marsh) in proportion to the present value—less any improvements that may have been made by them—of the separate parcels bought by them. Boyd, as we have stated, cannot be brought into the accounting, and his theoretical interest in the redemption sought by complainants is stated for the purpose only of ascertaining the amount of the redemption fund due to be assigned to Marsh.

The Elba Bank's debt has been paid in full by its foreclosure. Its alienee in the foreclosure process, J. A. Marsh, has died pending the cause. His estate is insolvent, and, in any case as to that, the legal or equitable rights as between his alienees and his estate have not been called into question in this cause. Walter Marsh must be treated as alienee of the mortgagee in possession with notice of the mortgagor's equity of redemption. On redemption he will be entitled to receive his proportionate part of the mortgage debt, including interest (after allowing credit for the personal property taken in the process of the alleged foreclosure); that amount to be apportioned to him—for aught appearing in this cause—in the manner heretofore stated. 3 Pom. Eq. Jur. § 1222. In like proportion he will receive credit for his pro rata share of the sum secured by the Forman mortgage at the date of its discharge by funds received by Forman from the land bank mortgage, with interest on the total amount thus to be ascertained to the date of the decree rendered, plus taxes and interest thereon and the amount, if any, paid by him on account of the purchase money to J. A. Marsh or his estate before he was made a party defendant to this cause, less the fair and reasonable rental value of the parcel purchased by him during the time of his holding with interest. Pollard v. American Freehold Land Mtg. Co., 139 Ala. 193, 35 So. 767.

■ As for the claim of the land bank to be reimbursed for the payment in relief of the Forman mortgage—as we have said it must be—that amount was lent by the land bank on request of Walter Marsh, and though it was without previous interest in the subject of the mortgage lien, it cannot be treated as a stranger, and to it the benefit of the doctrine of legal subrogation (or equitable assignment, as the authorities sometimes speak of it, 3 Pom. Eq. Jur. § 1212) will be extended; that course best serving the substantial purposes of justice, equity, and the true intention of the parties. Bigelow v. Scott, 135 Ala. 236, 33 So. 546; First Ave. Coal & Lumber Co. v. King, 193 Ala. 438, 69 So. 549.

■ The fact that the Forman mortgage was canceled of record does not prevent the application of the doctrine of subrogation (Hampton v. Counts, 202 Ala. 331, 80 So. 413), nor does the fact that the mortgage seeking subrogation covers also property other than that covered by the prior mortgage. First Ave. Coal & Lumber Co. v. King, 193 Ala. 438, 69 So. 549.

■ At the end of the scheme of redemption outlined above, the balance due to Walter Marsh, if any, shall be proffered to the

---

[1] Ante, p. 173.

land bank as a credit on its mortgage, to be accepted by it within a time to be fixed by the court, or, if declined by the bank, then to be paid to the said Marsh. In any event, that is to say, whether the amount so tendered, if any, be accepted or declined by the land bank, that part of the Tavner Marsh land now held by Walter Marsh shall, for the purpose of redemption, if exercised on behalf of complainants, be relieved of the burden of the land bank mortgage.

It is hardly necessary to say that the lien of the land bank on the land covered by its mortgage other than the Tavner Marsh land is in no wise affected by any ruling in this cause.

The lower court will make a decree carrying out the views here expressed and may refer it to its accounting officer to find the figures necessary to be found.

Affirmed in part; reversed and remanded in part.

All the Justices concur, except BROWN, J., who dissents to so much of the opinion as discharges Boyd.

BROWN, J. (dissenting in part).

On the former appeal, Marsh et al. v. Marsh et al., 215 Ala. 571, 112 So. 189, it was ruled by this court that: "One who claims title solely by virtue of or *under and through* a quitclaim deed is put upon notice of other equities against which said grantor would not warrant, and is not a *bona fide* purchaser." (Italics supplied.)

The parties had the right to rely on this utterance and try their case accordingly, and if that rule is applied to the facts of this case, neither Walter Marsh nor Boyd are innocent purchasers.

The rule of that opinion should be applied in testing the correctness of the decree of the trial court, because it was the law of the case when the decree was rendered.

On the other hand, if the rule of Gordon v. Ward (Ala. Sup.) 128 So. 217,[1] be now applied, appellants are deprived of the right to meet the defense of bona fide purchasers, by showing notice to Boyd and Marsh by other evidence than the quitclaim deed, and tend to destroy public faith in the law as declared by this court.

Although the court was within its rights in overruling the opinion promulgated on the former appeal, and it was its duty to do so, the law should be so applied as not to destroy the rights of the parties or their faith in the utterances of the court.

The principle underlying the following cases compels the application of the law as declared on the former appeal to the decree under review: Bibb v. Bibb, 79 Ala. 437; Majestic Coal Co. v. Anderson, 203 Ala. 233, 82 So. 483; Farrior v. New England Mortgage Security Co., 92 Ala. 176, 9 So. 532, 12 L. R. A. 856.

Therefore it is my judgment that the decree should be reversed as to both defendants, and the appellants allowed to present their case under the law as now declared, and therefore I respectfully dissent in so far as the decree is affirmed as to appellee Boyd.

[1] Ante, p. 173.