179 So. 819

**SUTLEY v. DOTHAN OIL MILL CO.**

4 Div. 982.

Supreme Court of Alabama.

Feb. 17, 1938.

Rehearing Denied March 17, 1938.

476

P. B. Traweek, of Elba, for appellant.

Farmer, Merrill & Farmer, of Dothan, and Fleming & Paul, of Elba, for appellee.

FOSTER, Justice.

The facts are somewhat intricate, and are as follows—taken from brief of appellee:

On November 21, 1929, D. E. Sutley recovered a judgment against Daisey Windham and W. P. Windham in the sum of $397, which judgment was duly recorded in the office of the judge of probate on March 28, 1931, and D. E. Sutley recovered a judgment against W. P. Windham and Daisey Windham on September 17, 1930, in the sum of $797, which judgment was recorded in the probate office of Coffee county, Ala., on April 27, 1931. After the judgments were recorded and on July 3, 1934, an execution was issued on the judgment for $797 and levied on the 20-acre tract of land and other lands by the sheriff, and was sold and D. E. Sutley was the purchaser at the sheriff's sale and received a sheriff's deed to said lands, which deed is dated February 5, 1934.

The bill as originally filed by the Dothan Oil Mill Company, a corporation, was against D. E. Sutley, W. P. Windham, Daisey Windham, W. P. Windham Lumber Company, a corporation, and J. W. Hicks, receiver of the Elba Bank & Trust Company, and was filed for the purpose of correcting a mistake in that certain deed dated March 31, 1930, made by J. W. Hicks, receiver of the Elba Bank & Trust Company, to the W. P. Windham Lumber Company, seeking to reform said deed to the end that it would convey a 20-acre tract of land, and to enjoin the prosecution of an ejectment suit brought by D. E. Sutley against W. P. Windham and Daisey Windham.

The bill sets forth, in substance, the following facts: That W. P. Windham and Daisey Windham were indebted to the Elba Bank & Trust Company by mortgage dated June 26, 1926, and which was secured by the 20-acre tract of land, said mortgage being in the amount of $5,102.22, and was for the purchase price of the 20-acre tract. This mortgage was renewed by mortgage dated June 6, 1927, in the sum of $4,408.93, and was likewise secured by the 20-acre tract of land.

On March 20, 1930, Daisey Windham and W. P. Windham executed a deed to J. W. Hicks, as receiver of Elba Bank & Trust Company, conveying him the 20-acre tract of land and other lands. This deed was not recorded.

On March 31, 1930, which was eleven days later, J. W. Hicks, receiver of the Elba Bank & Trust Company, made a deed to the W. P. Windham Lumber Company, a corporation, in which he conveyed a 60-acre tract of land, but omitted in said deed to describe and convey the 20-acre tract,

which the complainant, Dothan Oil Mill Company, contended the said Hicks intended to convey to W. P. Windham Lumber Company, a corporation, but by inadvertence or mistake was omitted in said deed, and the purpose of the original bill was to reform this deed. It was not recorded.

On June 10, 1931, the W. P. Windham Lumber Company, a corporation, made a mortgage to the Dothan Oil Mill Company, a corporation, and as security described the 20-acre tract of land and the 60-acre tract of land.

J. W. Hicks was duly appointed receiver of the said Elba Bank & Trust Company and was acting as such when the conveyance from Daisey Windham and W. P. Windham to him and from J. W. Hicks, receiver, to the W. P. Windham Lumber Company were made, and these conveyances were made on account of certain litigation which was pending at the time the bank failed, between W. P. and Daisey Windham and the Elba Bank & Trust Company. After J. W. Hicks was appointed receiver, a settlement was reached and on the settlement the W. P. Windham Lumber Company, a corporation, contended that it had an equity of approximately $2,000 in 160 acres of land known as the "flowing well place," the W. P. Windham Lumber Company having been incorporated in 1927, and on the settlement W. P. Windham and Daisey Windham conveyed the 20-acre tract and the 60-acre tract here in dispute to J. W. Hicks, receiver of the Elba Bank & Trust Company, and likewise conveyed said receiver the 160-acre tract known as the "flowing well place." That after said conveyances were made to the receiver the court approved the settlement and order or permitted the receiver to convey the 20-acre tract and the 60-acre tract to the W. P. Windham Lumber Company, a corporation, which it, W. P. Windham Lumber Company, a corporation, took in satisfaction of its equity against the 160-acre tract known as the "flowing well place," and the 160 acres were taken by the receiver in satisfaction of all mortgages held by the bank against the Windhams.

These transactions, that is, the conveyance by W. P. and Daisey Windham to J. W. Hicks, receiver, and the conveyance from J. W. Hicks, receiver, to the W. P. Windham Lumber Company, occurred in March, 1930, and the judgment on which execution was issued and under which the land was sold in favor of D. E. Sutley against Daisey Windham and W. P. Windham was dated September, 1930, and was recorded on April 27, 1931.

Following this, and on June 10, 1931, the W. P. Windham Lumber Company, a corporation, made its mortgage to the Dothan Oil Mill Company, a corporation.

The evidence is without dispute on the part of W. P. Windham, W. P. Windham Lumber Company, a corporation, and J. W. Hicks, receiver of the Elba Bank & Trust Company, that the 20-acre tract of land was omitted from the deed from J. W. Hicks, receiver, to the W. P. Windham Lumber Company, by mistake, but as between the parties, that is, the grantor and the grantee, no contention was made that the title did not pass.

This controversy therefore relates to the 20-acre tract, sometimes called 18 acres; and the bill seeks to reform the deed from Hicks to the lumber company. Since one of the judgments in favor of Sutley against the Windhams was rendered November 21, 1929, and the deed by them to Hicks, receiver, was made March 20, 1930, and the other judgment was rendered September 17, 1930; therefore when that deed was executed, Sutley was both a prior and a subsequent judgment creditor; and neither created a lien until after its execution.

■ The proof was sufficient to justify a reformation, so that an equitable right in it passed to the lumber company by the execution of that deed, and was held by it together with the 60-acre tract when the mortgage was made by it to the complainant. A reformation of the deed by Hicks to the lumber company, as prayed, will pass the title through it to complainant. That was a quitclaim deed. But that fact does not prevent the oil company under its mortgage from being a bona fide purchaser. Gordon v. Ward, 221 Ala. 173, 128 So. 217, and cases cited.

■ But if the deed from the Windhams to Hicks, as receiver, was void as to Sutley, judgment creditor, under section 6887, Code, because not recorded, the oil company cannot claim to be protected as an innocent purchaser against that right, because the unrecorded deed was a part of its chain of title of which fact it had notice; and also had notice that at the time its mortgage was taken on June 10, 1931, Sutley had obtained a judgment after the date of the unrecorded deed, and also had

notice that the deed by Hicks to the lumber company did not include this tract, and it did not acquire a legal title, because its mortgagor had none, all of which is sufficient to prevent the oil company from being protected as an innocent purchaser against any right which Sutley might have as a creditor whose judgment and lien were created after the unrecorded deed was executed to subject to the judgment the 20 acres here under consideration.

Although the tract was under mortgage to the bank when the judgment was rendered, the equity of redemption was subject to levy and sale, section 7806(3), Code, and it was that which was passed by the unrecorded deed.

■ When Hicks, as receiver, agreed to and did accept another tract of 160 acres, known as the "flowing well place," in full settlement, that released the 20 acres from all his claims and mortgages, leaving it free of the mortgage for the benefit of the judgment creditor, if the unrecorded deed was void as to such creditor.

■ Section 6887, Code, applies to judgment creditors (not creditors as in section 6918), and this has been held to mean those whose judgments were rendered subsequent to the date of the unrecorded deed, without notice at that time of the deed. Chadwick v. Carson, 78 Ala. 116; Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; Hall v. Griffin, 119 Ala. 214, 24 So. 27.

One judgment here in question was rendered before the date of that deed and one afterwards. From this it appears that the unrecorded deed conveying this tract to Hicks was void as to Sutley in respect to his judgment rendered September 17, 1930. It was under that judgment that the execution, levy, and sale of it were had. So that Sutley shows a superior right or claim, not now considering any claim of superior equity in the lumber company resulting from its asserted payments to the bank for the Windhams personally, so as to establish a right of subrogation in respect to the mortgage in priority to the judgment creditor.

It seems to have been on the basis of that assertion that Hicks conveyed by quit-claim deed one tract and agreed and intended to convey to it the 20-acre tract which was omitted by inadvertence. That brings up for consideration the question of whether such an equity takes precedence over Sutley, as a judgment creditor with a lien.

■ Section 6918, Code, protects the "title of creditors" without notice against trusts implied by law or created or declared by the parties. This has been construed to mean the acquisition of a lien by the creditor after the trust arose which is sought to be enforced, and when the creditor has no notice of the trust when his judgment lien was created. Guin v. Guin, 196 Ala. 221, 72 So. 74; Preston v. McMillan, 58 Ala. 84.

The deed to the lumber company was dated March 31, 1930, and if it had a right of subrogation, in the nature of a trust it existed then. Sutley did not acquire a lien until 1931, by recording his judgments. There is no claim of notice to Sutley actual or constructive. So that he is protected by such statute against this equitable claim of the lumber company, if such claim is a trust implied by law or created or declared by the parties. Section 6918, supra.

■■ We do not think that the statute had reference to any technical, exactly defined, trust. Subrogation is in the nature of a constructive trust, of equitable origin, to serve best the justice of the situation and accord with the intention of the parties. Strickland v. Carroll, 228 Ala. 498, 154 So. 109; Jefferson Standard Life Ins. Co. v. Brunson, 226 Ala. 16, 17, 145 So. 156; 19 Alabama Digest, Trusts, p. 36, ⊂⊃91.

Section 6918, supra, has been applied to resulting trusts, vendor's liens, and other equitable estates. Carter v. Challen, 83 Ala. 135, 3 So. 313; Silvey & Co. v. Cook, 191 Ala. 228, 68 So. 37; Autauga B. & T. Co. v. Chambliss, 200 Ala. 87, 75 So. 463; Marshall v. Lister, 195 Ala. 591, 71 So. 411; Guin v. Guin, supra.

The trial court seemed to rely largely on Bailey v. Timberlake, 74 Ala. 221. That case holds that a judgment creditor is not protected against the equitable right of reformation, because it is not within section 6887, Code, but is only an equitable lien or estate, and is superior to a judgment creditor. The opinion did not mention section 6918, Code, then in effect. It has been criticized in one respect (O'Neal v. Seixas, 85 Ala. 80–83, 4 So. 745) and overruled in another (Powers v. Andrews, 84 Ala. 289, 294, 4 So. 263). That case did not attempt to define a trust under the

statute nor in fact to consider it. It may have been overlooked. Whether or not the equitable right to reformation is a trust under it, we think subrogation is included.

Although the purpose of this bill is to reform the deed to the lumber company by Hicks, that remedy is not now a matter for consideration in the interpretation of section 6918, Code, because it only applies to the right to enforce a trust in property, subject to sale under execution, and enforceable against the judgment debtor. This right of reformation is against Hicks, and its enforcement would not deprive the judgment creditor of what rights he otherwise has.

The question is whether the lumber company has an equity against the property as owned by the judgment debtor, which is superior to that of the judgment creditor. As to the right of subrogation, the judgment creditor is protected by section 6918, supra, assuming that it was otherwise enforceable, as to which we need not inquire.

If the deed to Hicks was void as to this land in so far as Sutley was concerned, because it was not recorded, it would be immaterial respecting Sutley's rights whether Hicks included it in the deed to the lumber company or not, unless it had an equity which was superior to that of Sutley. This it did not have by reason of section 6918 assuming that it otherwise existed.

We have therefore concluded that the sheriff's deed to Sutley in so far as the 20 acres are concerned conferred on him a title superior to the rights of Dothan Oil Mill Company, the complainant, and to any claim of Daisey and W. P. Windham and W. P. Windham Lumber Company. The cross-bill seeks to have possession awarded to him and that it be enforced by process. We think he has shown a right to do so.

As to the 60 acres, there is some confusion in the description, and other rights which have not been fully litigated here. We think it best not to enter a decree as to that because the evidence is not clear as to it, and no equity is sought to be enforced.

Sutley was enjoined in this suit from prosecuting his action for the recovery of both tracts. As to the 18 or 20 acres described as follows: 20 acres of land, more or less, described as follows: Beginning on north bank of Big creek on west margin of Troy-Elba highway at the concrete bridge, run thence northward along west margin of said highway 525 yards, then west to Big creek, and thence in a southeasterly direction, following the creek to the point of beginning, together with all tenements and appurtenances thereunto belonging, situated in section 16, township 6, range 20, in Coffee county, Ala., a judgment is here rendered declaring the title to be in D. E. Sutley at the time of his death, and the right of possession in his administrator, who has been made a party to this suit, for which a writ of possession may issue out of the circuit court, in equity. Anniston L. & T. Co. v. Stickney, 132 Ala. 587, 31 So. 465; Section 6092, Code. As to the 60 acres described in the action at law as follows: The northeast quarter of the southwest quarter and all that part of the southeast quarter of southwest quarter lying west of Whitewater creek, in section 21, township 6, range 20, in Coffee county, Ala., being 60 acres, more or less, the injunction is dissolved, but nothing is here decided as to the rights of the parties.

The costs are taxed against Dothan Oil Mill Company, appellee.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, Justice.

It is insisted that Sutley had notice sufficient to subordinate his claim to the unrecorded deed and to take him out of the protection of section 6887, Code, because after the judgment was rendered and before it was recorded, the Windhams executed another deed, and recorded it, to Hicks, conveying other land but containing a reference thought to be sufficient to charge Sutley with notice of the unrecorded deed to which we have referred.

There are several reasons why it does not have that effect in our opinion so as to prevent the operation of section 6887, Code. One which is all sufficient is that it was executed and recorded after the judgment was rendered, though before a lien on the judgment was created. That section protects a judgment creditor who had no notice when his judgment was rendered, not when the lien was created. Chadwick v. Carson, supra; Hall v. Griffin, supra; Wiggins v. Stewart, supra;

Winston v. Hodges, 102 Ala. 304, 309, 310, 15 So. 528.

It is different from section 6918, Code, in that respect which protects the "title of creditors," and as to which the effective date of notice is when the lien is created, not when the judgment was rendered. Guin v. Guin, supra; Preston v. McMillan, supra.

But the contention is further made that the deed conveying the 160 acres in January, 1931, and recorded then, being prior to the record and lien of Sutley's judgment, and the fact that though the mortgages on the 20-acre tract were thereby canceled and released, all operated to give Sutley notice of the right of subrogation which the corporation claimed, to those mortgages on that land, and was sufficient under section 6918, Code, because they occurred prior to the record of the judgment.

But we do not see that the record of the mortgages and that they appeared unsatisfied gave notice that the corporation had in some manner contributed to its satisfaction as to be entitled to the equitable right to have them kept alive for its benefit. Sutley may rely on the satisfaction and release of the mortgages, which was in fact the agreement, however that agreement may be evidenced, and whether he had notice of it or not. His claim to the benefit of that agreement in fact unknown to him, is not notice to him that the corporation released its asserted equity in another tract to help get the release under such circumstances as that a court of equity will keep the mortgages alive for it, though they were agreed by all to be cancelled and satisfied.

Of course, if the deed executed by Windham to Hicks in January, 1931, had the effect of giving notice of such equitable right, it would be sufficient to that end, and Sutley would not be protected under section 6918, Code. That deed conveyed 160 acres of land—none of which is here involved.

Sutley did not sell that land under his execution, makes no claim to it now, and the deed in question is not in the chain of the title to any land which he does claim.

He is bound to take notice of what appears on the face of the deeds in the chain of his title, or in respect to the land which is in question executed by one who has a record interest in it, but he is not bound to inquire into collateral circumstances growing out of conveyances of land which he does not claim. Burch v. Carter, 44 Ala. 115; Lehman, Durr & Co. v. Collins, 69 Ala. 127; Pearce v. Smith, 126 Ala. 116, 28 So. 37; Scotch Lumber Co. v. Sage, 132 Ala. 598, 32 So. 607, 90 Am.St. Rep. 932; Tennessee C., I. & R. Co. v. Gardner, 131 Ala. 599, 32 So. 622; Brannan v. Marshall, 184 Ala. 375, 63 So. 1007, L.R.A.1918C, 786; Gimon v. Davis, 36 Ala. 589.

But assuming that it gave him notice of its recitals, they are that the land which Hicks had deeded to the corporation was released from all claims by virtue of the mortgages to the bank. It did not recite the fact that the corporation had contributed to such satisfaction so as to be entitled to subrogation. But, on the contrary, the implication is that the mortgages are not to be kept alive for any purpose.

We did not undertake to analyze the evidence to see if it is sufficient to show that the corporation in good faith paid its money to the extent of $2,000 on account of the 160 acres of land for the Windham stockholders, and thereby acquired a right of subrogation to the mortgage on it, or some other sort of equity in it, and which equity it released, in consideration of the deed to it of the other tracts, and that such release entered into and formed a part of the consideration for the satisfaction of the mortgages on those two tracts, and that in doing so it was not a volunteer as to those tracts, since it had no other rights in them then to protect, but based our conclusion on the want of notice of any such right, if it existed, brought home to Sutley before he acquired his judgment lien.

Our conclusion in that respect has not been changed by the brief on this application, for the reasons we have stated.

Application overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.