195 So. 873

### BATSON et al. v. ETHERIDGE.

6 Div. 573.

Supreme Court of Alabama.

March 28, 1940.

Rehearing Denied May 9, 1940.

McEniry & McEniry, of Bessemer, for appellants.

538

E. E. Wilson and L. Herbert Etheridge, both of Bessemer, for appellee.

FOSTER, Justice.

The questions here involved primarily depend upon the claim by the administrator of the insolvent estate of a decedent of an equitable right to declare a trust in land purchased by one who was executrix of such estate and widow of decedent. The purchase was made by her of the land of said estate at a time when she was such executrix, and the sale was for taxes due upon said land. Her purchase was with her own funds and was in the nature of a redemption by her. The bill indicates that the purchase at the tax sale was on her account by her son-in-law who afterwards deeded the land to her. It was not a sale made by the executrix herself in which she purchased having an interest, as we will show.

There are subsidiary questions involved which we will develop. The appeal is by respondents from a decree overruling demurrer to the bill.

Appellee as administrator of the insolvent estate filed the bill. As amended, it prays for the right to assert a beneficial interest in the land for said estate, upon a reimbursement of such amounts as may be chargeable upon granting such relief. (We are not seeking to quote, but give our interpretation of the amended bill as framed.)

The bill alleges that Nancy E. Batson was executrix of the estate, and that during the pendency of her administration the land in question was sold for taxes, in the year 1932, and purchased by her son-in-law, and that she while still executrix redeemed or purchased the land from him taking a quitclaim deed to her individually: that for the years 1933, 1934, 1935, 1936 and 1937, which embraced the balance of her administration, she assessed the land as that of the estate, and made no individual claim of it: that when complainant was appointed administrator he assumed dominion of the land and held it for 1938 and 1939, and assessed it as that of the estate: that when said executrix filed her petition to have the estate declared insolvent she listed this land as belonging to the estate, but claimed a lien on it for the money advanced on redemption. She has conveyed by quitclaim deed the land in question to her son, one of the appellants, M. C. Batson, who is claiming it adversely to the rights here asserted. This was done between the 16th and 19th of August 1938.

Estoppel.

M. C. Batson claims that complainant is estopped to assert this claim for his estate, because the bill alleges that complainant prepared the quitclaim deed, and knew that he expected to buy it from his mother. But there are several reasons why the doctrine of estoppel in pais does not here apply.

The bill also alleges that M. C. Batson had full knowledge of all the circumstances on which the right of complainant is based: that although complainant did prepare the deed it was because of an agreement he had with Nancy Batson that she would deed to whomsoever complainant designated: that M. C. Batson agreed to get his mother to execute the quitclaim deed to him, and then return to complainant and pay complainant, getting a deed from him also, by leave of the court: that he had his mother to sign the deed, and did not return nor pay him as he had agreed. Upon principles too well known to discuss, there was no element of estoppel in pais shown by such allegations.

Moreover, the administrator of an insolvent estate cannot sell land or personalty of said estate, without an order of the court. Section 6029, Code; section 5832, Code; Rule 113 Chancery Practice; Howell v. Randle, 171 Ala. 451, 54 So. 563; Anderson v. Steiner, 217 Ala. 85,

115 So. 4. Such administrator is unable by his contract to bind the estate, and therefore the estate cannot be estopped by his conduct on that equitable doctrine. Merchants' National Bank v. Hubbard, 222 Ala. 518 (7), 133 So. 723, 74 A.L.R. 646; 19 Amer.Jur. 644, section 45.

### Equity of the Bill.

The equitable right of appellee is not based upon the theory that an executor has become the purchaser at his own sale; for with a personal interest in the property sold, this is permitted under proper safeguards, as appellant has argued. Section 5868, Code; Bank of Wetumpka v. Walkley, 169 Ala. 648, 53 So. 830; Schloss & Kahn v. Brightman, 195 Ala. 540, 70 So. 670; 10 Alabama Digest, 182, Executors and Administrators, ☞ 365; McCraw v. Cooper, 218 Ala. 186, 118 So. 333.

But the equity of the bill is well sustained on the principle that when an executor or the trustee, with his own funds, deals in claims or property rights in which the beneficial estate is interested, the beneficiaries have the equitable right to have him declared to be a constructive trustee for them of such rights upon reimbursing him for his personal outlay in that connection. Powell v. Powell, 80 Ala. 11; Tallassee Oil & Fertilizer Co. v. Royal, 209 Ala. 439, 96 So. 620; Profile Cotton Mills v. Calhoun Water Co., 189 Ala. 181, 66 So. 50; 19 Alabama Digest 41, Trusts, ☞ 102 (1); 65 Corpus Juris 476, section 226, note 28, and Alabama cases there cited.

This principle embraces a redemption of land from tax sale by one who has a share in it. Such redemption inures to the benefit of the other shareholders upon their election within a reasonable time. Bailey v. Bond, 237 Ala. 59, 185 So. 411.

While Nancy Batson acquired those rights in 1932, the bill alleges facts which show that she fully recognized the fact that she held the land as trustee until she made the deed here in question. After she made her final settlement in which she listed this land, as the bill alleges, as an asset of the estate, she thereafter expressly agreed, though verbally, with the administrator of the insolvent estate that she would execute deeds to his purchasers upon payment to her of her charges on it. This she did in several instances. Here she sold by quitclaim to her son without recognizing the rights of the estate. This bill was filed soon afterwards.

The equitable right of complainant was not thereby created as appellee claims by a verbal agreement. But it was kept from growing old by such arrangement. The equity of the bill is well supported, and not barred by limitations or laches.

It is also insisted that Nancy Batson is a necessary party. But the bill alleges that she has conveyed to M. C. Batson who is a party all her right, title and interest in the land (a quitclaim). She is therefore not a necessary party. Gravlee v. Lamkin, 120 Ala. 210, 24 So. 756; Wilkinson v. May, 69 Ala. 33; Batre v. Auze's Heirs, 5 Ala. 173; Boutwell v. Steiner, 84 Ala. 307, 4 So. 184, 5 Am.St. Rep. 375; Hester v. First National Bank, 237 Ala. 307, 186 So. 717.

### Claim against Stringfellow Lumber Company, a Respondent.

The bill alleges that complainant learned on August 19, 1938, that M. C. Batson was negotiating for a sale of the timber on the land, but did not learn the name of the prospective purchaser. So that, on August 20, 1938, he filed a bill in equity, not that in the instant suit, seeking a redemption of all the lands including that here involved and against Nancy Batson and M. C. Batson and their assigns whose names were unknown, and also filed a lis pendens on that day, as he had on the day before, of the pendency of his suit to redeem said land. The present status of that suit is not alleged.

This bill then alleges that he learned that Stringfellow Lumber Company claimed to have purchased said timber on August 25, 1938, not directly from M. C. Batson, but through an intermediary, whose name he could not learn, but who was only a dummy for M. C. Batson, and that this was known to Stringfellow Lumber Co. Complainant alleges that he learned those details about October 4, 1938: that the Stringfellow Lumber Company had then cut and removed the greater portion of the timber on the land. The filing of the bill in this suit followed in March 1939. It seeks not only the enforcement of a trust upon payment of lawful charges after deducting the amount, if any, of the value of the timber sold, but also if said amount is more than that of the lawful charges, it prays for a personal decree against both the parties for the amount of

540

the value of such timber less the amount of the lawful charges, and offers to do equity.

■ We cannot support a claim that the bill is thereby multifarious. All aspects of relief grow out of a sequence of events relating to one transaction. Section 6526, Code; 8 Alabama Digest 477, 478, Equity, ☞ 147, in which both parties are interested.

■ It is next insisted that the bill does not show notice to the Stringfellow Lumber Company of complainant's equitable right when it purchased and paid for the timber. The deed by Nancy Batson to M. C. Batson was a quitclaim deed. The Stringfellow Lumber Company can be a bona fide purchaser from one who holds a quitclaim deed. Gordon v. Ward, 221 Ala. 173, 128 So. 217: changing the rule in Marsh v. Marsh, 215 Ala. 571, 112 So. 189. See Marsh v. Elba Bank & Trust Co., 221 Ala. 683, 130 So. 323; Sutley v. Dothan Oil Co., 235 Ala. 475 (2), 179 So. 819. But M. C. Batson is not an innocent purchaser under such a deed to him. But for Stringfellow Lumber Company to be so as the purchaser from such quitclaim grantee, it must have a warranty deed for value and be without notice. The bill does not allege whether Stringfellow Lumber Company had a warranty deed or not. The burden of allegation is on complainant.

The bill alleges in the tenth paragraph that Stringfellow Lumber Company had knowledge of complainant's equity at the time it acquired its conveyance "or had knowledge of facts which if properly investigated would have shown that complainant was claiming title to said timber."

■ There was no ground of demurrer to this feature of the bill directed to its insufficiency which has been brought to our attention. The above quoted feature of it may be a conclusion of the pleader, and, therefore, a defective statement of notice. Dothan Grocery Co. v. Dowling, 204 Ala. 224 (4), 85 So. 498.

But a defective averment of notice will be treated as sufficient in the absence of a demurrer pointing out the defect. Section 6553, Code.

■ The ground of demurrer in that connection which is assigned as error and argued in brief is addressed to the sufficiency of the lis pendens filed in connection with the suit first filed. If the Stringfellow Lumber Company had notice of complainant's equity at the time it purchased the timber from M. C. Batson and paid him, it is immaterial what effect the lis pendens notice might have so far as this suit is concerned. But on the trial, such proof may not be made, putting complainant on the effect of the lis pendens statute to give notice.

■ The purpose of the lis pendens record is to afford purchasers of land pending suit an opportunity to have a better method of protecting themselves against the common law doctrine of lis pendens; so that, if such notice is not filed as authorized, a purchaser from a party to such a suit is not affected by the result of that suit, unless he has actual notice of it. Section 6881, Code; Morton v. New Orleans & S. R. Co., 79 Ala. 590, 605. The effect of the statute, as expressed in section 6881, Code, is that only when it is complied with does the common law doctrine apply. It merely by that process preserves its force. The statute applies only when one purchases during the pendency of a suit in which the rights which such purchaser bought are being instantly litigated, and thereby makes available the common law principle.

There are authorities which state that the common law principle of lis pendens is such that it gives notice of the matters claimed in the suit. Center v. P. & M. Bank, 22 Ala. 743; Fash v. Ravesies, 32 Ala. 451; Federal Land Bank v. Ozark City Bank, 225 Ala. 52, 142 So. 405; 17 R.C.L. 1014.

■ But all such statements are made in connection with questions which arose in the suit or the effect of the suit itself upon one who purchases pending that suit. But it has been frequently pointed out that the foundation of the common law rule of lis pendens is not notice, but public policy and necessity which forbid a litigant to give others pending the litigation rights so as to affect the proceedings of the court then progressing to enforce those rights. 38 Corpus Juris 8; 17 R.C.L. 1012, section 5. This Court in Greenwood v. Warren, 120 Ala. 71, on page 76, 23 So. 686, referred to this view of it, showing that it is not founded on any idea of constructive notice. See, also, First Ave. C. & L. Co. v. Rimer, 222 Ala. 545, 133 So. 589.

Our statute on the subject does not state that the record is notice. Section 6881, Code. It does not affect the nature of

the common law principle, but provides a protective measure for land purchasers.

We do not think further discussion is necessary. The bill as it is now framed is not subject to the demurrer interposed, though it is not sufficient to show that the lis pendens record charged the Stringfellow Lumber Company with notice of appellants' equitable claim here sought to be enforced. But under the allegations of the bill complainant may show actual or constructive notice upon principles which have general application in that respect. And, indeed, must do so.

The decree of the trial court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

FOSTER, Justice.

In decreeing a redemption of the land by complainant, if such right is established in this case, it will not be done except upon the payment of such sum as should be paid upon due consideration of any right to dower which may be set up and claimed by her or those holding under her. We did not mean to imply that any such claim is cut off. That question was not considered by us and is not here determined. But the fact that she may have such interest does not militate against the equity of this bill on the theory which we discussed.

Application overruled.

GARDNER, C. J., and THOMAS and BOULDIN, JJ., concur.