# Richardson *et al. v.* Horton.

*Bill in Equity to foreclose Mortgage.*

1. *Register's report; when properly set aside by chancellor ex mero motu.*—Where the report of a register in chancery is not in consonance or in compliance with a decree of reference, it is competent for the chancellor, upon the coming in of the report, to set it aside, even *ex mero motu*, and order another reference if deemed advisable, or to ascertain himself the amount of the debt.

APPEAL from the Chancery Court of Conecuh.

Heard before the Hon. WILLIAM L. PARKS.

The bill in this case was filed by the appellee, W. K. Horton, against the appellants. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

G. R. FARNHAM, for appellants, cited *Woodrow v. Hawving.* 105 Ala. 240; *Ward v. Bank of Abbeville*, 130 Ala. 597; *McQueen v. Whetstone*, 127 Ala. 417; *Vaughn v. Smith*, 69 Ala. 92.

STALLWORTH & BURNETT *and* JAS. A. STALLWORTH. *contra,* cited *McCurdy v. Middleton*, 90 Ala. 99.

[Richardson *et al.* v. Horton.]

HARALSON, J.—The bill was filed by W. K. Horton, against Jack and Dinah Richardson, to foreclose a mortgage on lands described in the bill, executed by defendants on the 30th day of November, 1889, to one N. M. Fortner, to secure certain notes mentioned in the mortgage, which were given, as the evidence shows, for the purchase money of the lands described, sold by said Fortner to the defendants, and for an attorney's fee of $100 for the foreclosure of this mortgage, that the complainant Horton, at the request of defendants, paid to said Fortner the sums due on said notes and mortgage, amounting, at the time, to $227.95, in consideration of which payment the said Fortner, on the 14th of November, 1892, transferred and conveyed to said Horton said mortgage, and that the defendants have failed and refuse to pay said mortgage indebtedness. The defendants in answer admit the execution of said mortgage, allege that they owe nothing on the mortgage, and as a defense set up that they paid the same.

The evidence shows, that complainant had, before the execution of said mortgage been advancing to defendant Jack Richardson, to enable him to make crops, and that complainant continued to advance to him for that purpose in years thereafter,—1893, 1894, 1895, 1896, 1898. At the time said Fortner transferred to complainant the mortgage in question, to-wit, on November 14th, 1892, Jack Richardson executed and delivered to complainant a written agreement, by which, in substance, said Richardson promised to pay to complainant, all accounts that he then owed him, if complainant would pay to said Fortner, the amount due on the mortgage, and that complainant might hold said mortgage until he, the said Jack Richardson, should settle all the accounts due to complainant, and after such accounts were paid, then, any balance of payments should be credited on the mortgage on the land. The agreement concludes: "But the mortgage must be held by W. K. Horton until I have a final receipt in full for all indebtedness due him by me."

The chancellor, on a submission of the cause, decreed, on July 3, 1901, that complainant was entitled to relief, and that there was something due on the mortgage in

[Richardson *et al.* v. Horton.]

question, which was a valid and subsisting lien upon the property described in the mortgage. It was accordingly referred to the register, to ascertain the amount due on the mortgage debt in question, and report the same to the court.

The register executed the reference and. ascertained and reported to the court, that the defendants not only owed nothing on the mortgage to the complainant, but that complainant owed defendant the sum of $241.05. Exceptions were filed to this report, and the cause was submitted for final decree, of foreclosure, for a confirmation of the report by the defendant, and on exceptions thereto by the complainant. The chancellor rendered a final decree in the cause on the 25th of January, 1902, holding that the report of the register was contrary to the decree of the court, and set it aside. Proceeding for himself, he ascertained from the evidence, that defendant owed to complainant the sum of $397.90, including $100 for attorney's fee for conducting the litigation, which amount was admitted to be proper, if complainant was entitled to any decree at all, and ordered a sale of the lands for the payment of the amount ascertained to be due, if not paid by defendant within thirty days.

The terms of the decree not having been complied with, the register proceeded as instructed, and sold the land, at which sale, the complainant became the purchaser for the sum of $486, which sale was afterwards, on the 10th of July, 1902, reported to and confirmed by the court, and a deed was ordered to be executed by the register to the purchaser.

The appeal is taken from the decree of the court, rendered on the 25th of January, 1902, in which the court set aside the report of the register as being contrary and subversive of the decree theretofore rendered by the court in the cause, ascertaining that the complainant was entitled to relief and that something was due him. In this last decree the court, also proceeding for itself, ascertained that the amount due complainant was $397.90.

[Richardson *et al.* v. Horton.]

Inasmuch as the report of the register was not in consonance or in compliance with the decree of reference, it is not to be questioned, that it was competent for the chancellor, upon the coming in of the report, to set it aside, even *ex moro motu,* order another reference, if deemed advisable, or to ascertain the amount of the debt for itself.—*McCurdy v. Middleton,* 90 Ala. 101; *Thornton v. Neal,* 49 Ala. 592; 17 Encyc. Pl. & Pr. p. 1019, n. 3.

The evidence for the complainant and the defendant was in direct conflict; that for the complainant tending to show, that all the payments which were made by defendant to him in the several years defendant contends he furnished cotton to complainant, were applied to the payment for advances made to the defendant in those years, and not to the land debt, strictly, as was agreed by the defendant in the beginning should be done, and that defendant frequently acknowledged the land debt was still unpaid. The evidence tending to show such an application of the proceeds of cotton received, came from a number of witnesses, whose statements appear to be consistent and satisfactory. The plaintiff deposed that he kept on his books, a full and accurate account of all dealings between him and the defendant, and attached to his deposition a transcript from the books, to the correctness of which he swore, showing each item, and accounting fully for all the cotton he received, for what it sold, and how the proceeds were applied. There were but two items, one for $67.17, on the 8th of December, 1893, and the other for $18.00, on January the 27th, 1897, which were paid on the mortgage debt, and with each defendant was credited.

A simple and easy statement of this account, shows that the amount due complainant on the date of the rendition of the chancellor's decree, was the amount stated by him, to-wit, $397.90, including $100 attorney's fee.

The defendant kept no account, and the evidence by which he sought to prove the payments, rested in the uncertain memory of himself and witnesses as to transactions long passed, and which lacked agreement in many

[Locklayer v. Locklayer.]

instances. The difficulty with the defense is, not in the conclusion that defendant's witnesses swore falsely, but uncertainly, and that all the payments made, were upon the mortgage debt, whereas, it satisfactorily appears they went, except in two instances named above, to the payment of accounts for supplies furnished by plaintiff to defendant for several years, which he agreed in writing should be so applied until they were fully liquidated, before anything paid should be applied to the mortgage debt on the land. The chancellor so held, and we are unable to conclude that his decree was erroneous.

Affirmed.