SECURITY SAVINGS BANK OF WELLMAN, Appellant, v. E. F. SMITH AND OTHERS, Appellees.

Negotiable instruments: ACTIONS: FORUM.  A suit upon a note by the payee against the maker and sureties, in which the defenses pleaded amount merely to an estoppel, is a law action and not transferable to the equity side of the docket.

Same: BANKS AND BANKING: AUTHORITY OF CASHIER: SURETYSHIP:

2 ESTOPPEL. In the absence of restrictions known to the sureties upon a note payable to a bank, the cashier's authority to act for the bank will include an agreement made by him with the sureties to make collection of the debt, if practicable, out of property owned by the maker and pointed out to the cashier by the sureties. And if the sureties are led by the agreement of the cashier to undertake the collection for their benefit, and thus intrust their rights in a prosecution against the property of the maker, to the bank, they are entitled to defend against a suit on the note to the extent of the injury suffered by their reliance upon his conduct and representations.

Same: FRAUDULENT REPRESENTATIONS: EVIDENCE. In this action by 3 the plaintiff bank, payee in the note in suit, against the maker and sureties thereon, the evidence is held insufficient to show that the sureties were induced to sign the note by the fraudulent representations of the plaintiff's cashier as to the financial responsibility of the principal maker, in that it does not appear that the cashier knew his statement to be false, or that it was made with intent to induce the sureties to sign, or that they believed and relied upon its truth.

Same: INSTRUCTION: PREJUDICE. Where the sureties upon a note 4 alleged in an action thereon that they were induced to sign by the fraudulent representation of the payee, and it appeared without dispute that the note was given for a present loan to the maker, an instruction that if the note was given for a present loan and not for a renewal of a prior loan, then the presumption would be that there was no misrepresentation, was not prejudicial.

Attachment: DAMAGES: INSTRUCTION. Where, in attachment, only 5 actual damages were allowed, any error in instructing the jury that they might award exemplary damages was not prejudicial to the defeated party.

Instructions: STATEMENT OF ISSUES. An extended statement of the 6 issues, though unnecessarily so, may not amount to reversible error, where the pleadings are prolix, multitudinous, and containing much repetition and argument, with a mingling of allegations of fact and law, thus making it difficult to reduce the issues to a brief and clear statement.

*Appeal from Washington District Court.*—HON. K. E. WILLCOCKSON, Judge.

THURSDAY, OCTOBER 21, 1909.

ACTION at law upon promissory note.    Judgment for defendant, and plaintiff appeals.    An opinion affirming said judgment was handed down by this court on February 17, 1909.    On petition for rehearing it has been made to appear that certain features of the record were overlooked in our review of the case, and said opinion is therefore withdrawn, and the following is substituted therefor.—*Reversed.*

*C. A. Carpenter* and *S. W. & J. L. Brookhart,* for appellant.

*Wilson & Wilson* and *Eicher & Livingston,* for appellees.

WEAVER, J.—The note in suit is for the principal sum of $1,000, payable March 1, 1903, and is signed by H. B. Kreger, E. F. Smith and A. L. Palmer; the first named being the principal debtor and the last two his sureties. Kreger, though named as a defendant in the action, was not served with notice, and has not appeared thereto.    The sureties make defense, denying liability on the note, and plead matters by which they claim plaintiff is estopped from maintaining the action.    These grounds, stated as briefly as practicable, are as follows: First, that they were deceived and misled into becoming sureties for Kreger by the fraudulent misrepresentations of the bank, acting by its cashier, in representing Kreger to be solvent and safe, when in fact he was insolvent, and already indebted to the bank in large sums; second, that after the note became due, and they learned of Kreger's financial straits, they informed the bank that Kreger had title to or an interest in certain land in Minnesota, against which they would immediately begin legal proceedings to protect themselves from loss, whereupon the bank by its cashier proposed that it would itself at once proceed to enforce the collection against said property, and defendants need not give themselves further trouble about

it, and defendants, not knowing that the bank had other unsecured claims against Kreger, consented to the proposal, and withheld further effort on their part. They further allege that said bank did institute an action in attachment in the Minnesota court, but included therein not only the note now in suit, but also all its other claims against Kreger. They further allege that, before the sheriff's sale in said proceedings, they learned the fact as to the combination of all the bank's claims in the one judgment, and· on applying to plaintiff for an explanation they were assured that the land was more than sufficient to pay all the claims, and defendants would be fully protected against liability. It is their contention that, relying on these several assurances and representations, they did not take any further measures to protect themselves from loss on account of said claim, as they otherwise might and would have done, and plaintiff is now estopped to assert any further demand against them thereon. They also allege that the lands purchased by the plaintiff at the sheriff's sale were worth, at a reasonable and fair valuation, more than the entire amount of plaintiff's claim, and that the same has therefore been fully paid. While very many facts are pleaded and put in issue which are not expressly mentioned in the foregoing recital, we think all questions raised on the appeal are fairly referable to the controversy as we have here outlined it.

I.   On three different occasions, after issue joined and before trial, appellant moved to transfer the cause to the equity calendar. These motions were each denied, and error is assigned on the ruling. The point is not well taken. The action is the ordinary one upon a money demand. The defense, when divested of its involutions and repetitions, presents the issue of estoppel only. Surely it requires no citation or discussion of the authorities to uphold the proposition that such an issue is triable at law. Defendants ask no sub- rogation or equitable relief of any. kind, nor is plaintiff de-

1. NEGOTIABLE
INSTRUMENTS:
actions:
forum.

manding anything which a court of law cannot grant. The answers go to the simple question whether plaintiff is entitled to recover upon the note in suit. The motions to transfer were correctly overruled.

II. The statements, representations and arguments upon which the defendants base their defense of estoppel are alleged to have been made by the plaintiff's cashier.

2. SAME: banks
and banking:
authority
of cashier:
suretyship:
estoppel.

These allegations are severally denied by the cashier, who has some circumstantial corroboration of his theory of the transaction; but, so far as the truth of this issue of fact is concerned, there was a well-defined conflict in the testimony, and the verdict of the jury thereon cannot be said to be without sufficient support. It is argued, however, that, whatever may be the fact in this respect, the cashier is not shown to have had authority to bind the bank in said matters, and that the bank cannot be estopped by his conduct. Without now entering into any discussion of the general power and authority of a bank cashier, we are quite clear that, in the absence of special restriction known to the party with whom he deals, the apparent scope of such authority is broad enough to include the acts and agreements alleged by the defendants in this case. As a matter of common knowledge the cashier is ordinarily the active financial manager and agent of the bank. He is the one officer who as a rule is always present during business hours, exercising actual and immediate supervision of its affairs. He is the officer with whom the customers of the bank come most frequently in contact. Among other things, it has been held that he may compromise a debt due the bank; *U. S. v. Bank,* 21 How. 356 (16 L. Ed. 130); *Young v. Hudson,* 99 Mo. 102 (12 S. W. 632); *Corser v. Paul,* 41 N. H. 24 (77 Am. Dec. 753); *Stebbins v. Lardner,* 2 S. D. 127 (48 N. W. 847); *Bank v. Dick,* 73 Mo. App. 354; may institute suits and attachment proceedings in the name of the bank; *Bank v. Whitmore,* 40 Hun (N. Y.), 499; may em-

ploy an attorney to bring suit; *Eastman v. Bank,* 1 N. H. 23; *Southgate v. Railroad Co.,* 61 Mo. 89; *Root v. Olcott,* 42 Hun (N. Y.), 536, and may take such other measures as are reasonably adequate to obtain the collection or account of debts due the bank; *Bridenbecker v. Lowell,* 32 Barb. (N. Y.), 9.

It is not denied that the bank held several unsecured notes against Kreger in addition to the note in suit, which it was naturally and properly anxious to collect or secure. Under such circumstances it was also both natural and proper that it should desire to reach and subject Kreger's land to the payment of its claim as far as it might legitimately be done. As this land was the only fund or source in sight from which there was any prospects of making a collection, it was obviously to the advantage of the bank to proceed itself to sue out an attachment for the entire indebtedness, rather than to have the sureties upon this one note proceed independently. If then, under these conditions, upon being informed of defendants' intention to proceed against the land, the cashier said to defendants that they need go no farther, and the bank would bring the suit and protect them against loss, at the same time concealing from them the existence of the bank's claim over and above the one on which they were sureties, leaving them to believe that whatever was derived from a sale of said land would be first applied to the payment of the debt for which they were liable, we think that such representations and agreements were within the apparent scope of his authority, and if defendants, relying thereon, refrained from further action, and allowed the bank to proceed to exhaust the only means by which they could have protected themselves, the bank will not be heard to deny the power of the cashier in that respect, or to assert the right to apply the sum thus realized first to the payment of the unsecured debts of Kreger. To do otherwise would be to relieve the appellant from the most ordinary obligations of good faith. *Owens v. Stapp,*

32 Ill. App. 653. The undertaking on the part of the cashier was not, as counsel argue, an agreement to discharge the sureties without payment of the debt. It was an agreement to proceed to make the debt, if practicable, out of the land pointed out by the defendants, and if, by such agreement, defendants were lulled into a feeling of security, and led to give over into the hands of the bank the instituting and prosecution of the action against Kreger, then to the extent of the injury they have sustained by their reliance upon the conduct and representations of the cashier they are entitled to defend against plaintiff's demand upon the note. *Wolf v. Madden,* 82 Iowa, 114; *Bank v. Boddicker,* 105 Iowa, 555. There being evidence to support defendant's theory in this respect, there was no error in submitting the question to the jury.

III. The court by its charge submitted to the jury the question whether the defendants Smith and Palmer were induced to become sureties upon the note in suit by the false and fraudulent representations of plaintiff's cashier as to the financial standing and responsibility of the principal maker, Kreger. A careful study of the record leads us to the conclusion that there is no evidence found therein on which the jury could have properly found for the defendants on this branch of the defense, and that the submission of that issue was prejudicial error. The only testimony as to representations of any kind has reference to conversations had in a general way with the cashier three or four weeks before the note was given. In these conversations Kreger's name was mentioned, and the cashier stated Kreger had plenty of money yet, and had gone away from Wellman with $7,000, had invested it in land, and land had been advancing in price, and he seemed to be all right. At the time of this talk Smith and Palmer had not been requested to become sureties for Kreger, and so far as appears that transaction was not in contemplation by either party. It was not until three or

3. SAME: fraudulent representations: evidence.

four weeks later that Kreger returned to Wellman, and at his request Smith and Palmer signed the note with him. There is nothing whatever to justify the conclusion that the cashier was stating what he knew to be false, or, if false, that he made said statements to mislead defendants into becoming sureties for Kreger. Moreover, while it is true that Kreger was then indebted to the bank, there is nothing to indicate that what the cashier then said respecting his financial condition was not made in entire good faith, or that he did not then believe Kreger to be solvent. To be fraudulent the statement should not only be shown to be false, but that the cashier knew it to be false when he made it, and designed it to influence appellees to sign the note, and that appellees believed and relied upon its truth in becoming sureties thereon. The record is barren of such showing in this respect as would sustain a finding of fraud.

IV. In this same connection plaintiff excepts to the thirteenth paragraph of the court's charge, wherein the jury were told that if the note on which the defendants became sureties was given for a loan made at the time, and not for the renewal of a prior loan, then the presumption would be that there was no misrepresentation or fraud in the transaction. Counsel's objection is based upon the ground that it is shown without dispute that the note was given for a present loan to Kreger, and that there is no claim by any one that it is a renewal note. The criticism appears to be just, but we are unable to see how it could operate to the prejudice of appellant. The jury are presumed to have obeyed the instruction, and, it being shown without dispute that the note was given for a present loan, they must have given the appellant the benefit of the presumption.

4. SAME:
instruction:
prejudice.

V. In beginning this action the bank sued out an attachment and caused the same to be served by levying upon certain real estate, and by garnishing other local banks as supposed debtors of the defendants. Each of the defend-

ants pleaded counterclaims for injuries sustained by the

5. ATTACHMENT: damages: instruction.

wrongful suing out of the writ. The court by instructions withdrew these counterclaims from the jury so far as they related to alleged injury to the business credit and reputation of the defendants, and charged that the actual damages which could in any event be allowed were limited to interest on the defendants' funds tied up by the garnishment. They were also told that if they found the attachment to be both wrongful and malicious, exemplary damages might be added. On this branch of the case the jury returned a special verdict in favor of the defendant Smith for $76.40. It is objected that the instruction permitting defendants to recover exemplary damages is erroneous, but it being evident from the record that exemplary damages were not allowed, the error, if any, was without prejudice.

VI. The charge of the court is further objected to because the statement of the issues is too prolix, and made up largely of a recital of the allegations of the pleadings.

6. INSTRUCTIONS: statement of issues.

It must be admitted that the statement is very extended, perhaps unnecessarily so, but we think it is not open to objection as reversible error. It is to be said, also, in justice to the trial court, that the pleadings are not only prolix but multitudinous, containing much repetition and argumentation, and manifest a tendency upon part of the respective counsel to mingle with their allegations of fact dissertations upon what they believe to be the law in the case, thus making it very difficult to reduce the issues to a brief and luminous statement.

VII. Exceptions were preserved to several rulings upon the admission of evidence, but we find none which are not governed by familiar rules of law and none that we deem erroneous.

Other points made in the argument are too numerous to permit of their consideration separately without prolong-

ing this opinion to a tedious length. Those we have discussed we regard as of leading and controlling importance, and as necessarily governing most of the exceptions not specifically mentioned.

For the error mentioned in the third paragraph of this opinion a new trial must be awarded.—*Reversed.*