157 So. 75

**HAMILTON NAT. BANK OF CHATTANOOGA, TENN., v. LERMAN.**

**8 Div. 576.**

Supreme Court of Alabama.

Oct. 4, 1934.

Rehearing Denied Nov. 1, 1934.

D. L. Rosenau, Jr., of Athens, and E. W. Godbey, of Decatur, for appellee.

J. G. Rankin, of Athens, for appellant.

KNIGHT, Justice.

The appellant, Hamilton National Bank, doing business at Chattanooga, Tenn., on March 31, 1930, discounted a note of the Farmers' & Merchants' Bank, Athens, Ala., in the sum of $25,000, payable on September 20, 1930; and on April 16, 1930, it discounted another note of the said Farmers' & Merchants' Bank in the sum of $25,000, maturing October 15, 1930; and at a later date, viz., on July 17, 1930, the appellant discounted a third note of the same bank for $25,000, which matured also on October 15, 1930. The total of loans and advances made by appellant to said Farmers' & Merchants' Bank was $75,000, and the notes evidencing the said loans were each secured by the pledge of sundry customers' notes, given to and held by the debtor bank.

Sundry payments were made by the Farmers' & Merchants' Bank on its indebtedness to the appellant during the years 1930 and 1931, and the notes were renewed for the balance remaining unpaid on the same. On November 18, 1931, a renewal note in the sum of $11,982.05 was executed to the appellant by said Farmers' & Merchants' Bank, payable on December 18, 1931; and on November 24, 1931, another renewal note for $15,000 was executed to appellant by the same debtor.

Thereafter, on December 14, 1931, the Farmers' & Merchants' Bank, being insolvent, was placed in the hands of the superintendent of banks of the state of Alabama for liquidation. Since the closing of said bank, the appellant has received payments on the last two renewal notes in the aggregate sum of $24,247.50, from collateral securities, leaving a balance due on the two principal notes of about $1,286.25. Some of the collections were made by appellant after this suit was brought.

Among the collateral given by the Farmers' & Merchants' Bank to the appellant to secure its indebtedness to the latter was the note sued on, executed by appellee, and which was given by the appellee in renewal of a former note, and which former note had also been pledged to the Hamilton National Bank by the Farmers' & Merchants' Bank to secure the indebtedness above mentioned.

The present suit was instituted by appellant against the appellee on the last note so executed by appellee. The note is in form a negotiable promissory note, and is so declared on in the complaint, the plaintiff averring that the "Farmers and Merchants Bank, Athens, Alabama, the payee in said note, did, for a valuable consideration and before maturity, indorse, transfer and assign said note to the plaintiff and that the plaintiff is now the holder of the legal title thereto."

The defendant, Lerman, after the court had overruled his demurrer to the complaint, filed three special pleas, duly verified by the defendant, and also the plea of the general issue. The court sustained plaintiff's demurrer to plea 1 (a verified plea), but overruled the demurrer to special pleas 2 and 4.

At the close of the testimony, the plaintiff amended its complaint by striking the words "transfer and assign" where they appeared after the word "indorse" and by inserting in lieu thereof the words "and deliver." The judgment does not recite that pleas 2 and 4 were thereafter refiled to the complaint. However, the appellant states that, while the record does not show the refiling of the pleas and the demurrer thereto, they were in fact so refiled, and each party has treated the case here as if the pleas were in the case, when it finally went to the jury. The legal effect of the two special pleas was to deny the assignment of the note sued on. We are therefore warranted in so treating the case on this appeal.

On the back of the note sued on the following indorsement appears: "Farmers and Mer-

chants Bank, Athens, Ala. Harry Taft, Assistant Cashier." Over the objection of the defendant, the court permitted the introduction of the note and indorsement in evidence.

At the conclusion of the evidence, and after the amendment of the complaint, as above pointed out, the court, at the written request of the defendant, gave the jury the general affirmative charge in his behalf.

Only two errors are assigned upon the record, one presenting for review the court's action in overruling appellant's demurrer to plea 2; and the other presents for review the action of the court in giving the jury the affirmative charge in behalf of the defendant.

The appellee's principal argument here made is that a cashier of a banking institution is without authority to transfer or pledge the notes of the bank to secure an antecedent or past-due debt owing by the bank; that the said Harry Taft, as assistant cashier, was without authority under the law and the facts of the case to transfer or indorse the note sued on to the plaintiff, and, that being true, his effort to that end was abortive, and the appellant, the Hamilton National Bank, acquired no title to the note by this attempted transfer and assignment; that the note is still the property of the original payee, the said Farmers' & Merchants' Bank, and is rightfully an asset of the latter bank, and therefore should be in the hands of the liquidating agent of that bank.

The contention of the appellee is predicated upon the assumption that the note in question was pledged to secure a past-due debt, and that the assistant cashier was without authority to bind the Merchants' & Farmers' Bank in making the transfer. The trial court, by its action in giving the affirmative charge in behalf of the defendant, assumed, as a matter of law, that the transfer or indorsement of the note to the appellant was unauthorized, and therefore conveyed or passed no such title to the note as would justify a suit thereon by the indorsee. We do not think that the ruling of the court, under the evidence and principles of law applicable to the case, can be sustained. We will undertake to demonstrate the correctness of our view.

Harry Taft testified:

"In the fall of the year 1931, I was assistant cashier of the Farmers and Merchants Bank of Athens, Alabama; I have examined the note shown me which is of date November 15, 1931, for the sum of $10,067.20, payable to the order of Farmers and Merchants Bank, Athens, Alabama, on January 2, 1932, and purporting to be signed by E. D. Lerman; that note was in the hands of the Farmers and Merchants Bank; I stamped on the back of that note 'Farmers and Merchants Bank' and wrote under it 'Harry Taft, Assistant Cashier,' and sent it to the Hamilton National Bank, Chattanooga, Tenn.; I do not know the amount the Farmers and Merchants Bank owed the Hamilton National Bank at that time but can tell by looking at the books; this sheet here shows that it was $25,533.82; the Farmers and Merchants Bank closed on December 12, 1931; there is no date on the stamp on back of the note but it was sometime between the date of the note and December 12, 1931, when it was done; I indorsed it and sent it to Hamilton National Bank.

"I know as a matter of fact that Farmers and Merchants Bank was indebted to Hamilton National Bank in a large amount at all times from the spring of 1930 until it closed on December 12, 1931, and long after February 27, 1932, and I sent the Hamilton National Bank notes payable to Farmers and Merchants Bank as collateral security for that debt; the notes were changing from time to time; as the notes would come due we *would substitute one collateral for another, substitute other notes for the ones that were due; and I sent this note to Hamilton National Bank to substitute for some other note or notes.*" (Italics supplied.)

On cross-examination by defendant the witness (Taft) testified: "I have not the faintest idea what other notes that I substituted this one for. Q. Were the substituted notes sent back to the bank after you sent Lerman's note? A. When the note would become due they would notify us that we would send substitutions and they would send the notes back. I do not know what notes were sent back and don't know when they were received; don't know whether they were received before the bank went into the hands of the Superintendent of Banks; I don't know how long before the Farmers and Merchants Bank went into the hands of the Superintendent of Banks that I sent the Lerman note which is sued on to Hamilton National Bank; it might have been along in December; it wasn't just a day or two; the Superintendent of Banks took over the Farmers and Merchants Bank on December 14, 1931, it is possible that it was just three or four days before that."

The defendant introduced in evidence the answers of the plaintiff to interrogatories propounded to it by the defendant.

Question 8 was: "State when, how and in what transaction you acquired the note sued on, and what representative of yours negotiated the acquisition thereof by you, and who represented the Farmers and Merchants Bank in that transaction? Answer: The note sued on is a renewal of a note given by defendant to Farmers and Merchants Bank, and which was pledged to the plaintiff as collateral security for the indebtedness of Farmers and Merchants Bank to the plaintiff, the prior note matured on November 15, 1931, *on which date the plaintiff sent the said note to Farmers and Merchants Bank for collection or renewal.* The said note was renewed and returned to the plaintiff by Farmers and Merchants Bank and received by it on December 11, 1931, with the indorsement of the said Farmers and Merchants Bank on the back thereof."

In answer to another question asking, among other things, what was the occasion of emergency by which the plaintiff acquired or took the note sued on, the following response (in part) was made: "The occasion of acquiring the note sued on was the agreement of Farmers and Merchants Bank to keep its indebtedness to the plaintiff collateraled at the rate of at least two dollars of collateral for one dollar of its indebtedness."

We have set out more of the testimony than we would ordinarily do, for the reason that we are impressed that there were inferences to be drawn therefrom, which at all events required the submission of the cause to the jury, if it did not entitle plaintiff to the general charge in its favor. The latter proposition we are not called upon to determine, as no such charge was requested.

■ There can be no doubt but a banking corporation like an individual may borrow money for the conduct of its affairs without express authority therefor, whenever the nature of its business may render it proper or necessary. And it is well settled that this rule applies to a banking corporation. 3 R. C. L. § 55, p. 427.

■ And the cashier has inherent power to borrow money in the regular course of the business of the bank, and may secure the loan by note, or pledge its property, such as commercial paper, for its payment. Morse on Banks and Banking, vol. 1 (6th Ed.) § 160, p. 441; 3 R. C. L. § 79, p. 450; Citizens' Bank v. Bank of Waddy, 126 Ky. 169, 103 S. W. 249, 11 L. R. A. (N. S.) 598, 128 Am. St. Rep. 282.

It is likewise recognized that even in a small corporation it is impossible for the cashier personally to do all the business included in the general functions of the office of cashier; that he must have subordinates, and these subordinates are under his direction, and are, as it were, the arms by which designated portions of his various functions are performed. Morse on Banks and Banking (6th Ed.) vol. 1, § 173, p. 492.

■ The cashier of a banking institution is its chief executive officer, and its general agent, generally speaking, through and by whom the whole financial operations of the bank are conducted, in accordance with the general usage, practice, and course of business of banks. Accordingly, his acts within the scope of such usage will bind the corporation in its business dealings with third persons without notice of limitations on the authority of such officer. Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 650, 19 L. Ed. 1008, 1019; Security Savings Bank v. Smith, 144 Iowa, 203, 122 N. W. 825; First National Bank v. Greenville Oil, etc., Co., 24 Tex. Civ. App. 645, 60 S. W. 828; Davenport v. Prentice, 126 App. Div. 451, 110 N. Y. S. 1056; Knapp v. Saunders, 15 S. D. 464, 90 N. W. 137; Pemiscot County Bank v. Central State National Bank, 132 Tenn. 152, 177 S. W. 74; Morse on Banks and Banking, vol. 1 (6th Ed.) § 151.

■■ We have held, as a general principle, that, where it is necessary to the proper transaction and carrying on of the business committed to the agent, the latter has implied authority to appoint subagents. Globe & Rutgers Fire Ins. Co. of N. Y. v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827. This principle would, of course, apply to the appointment of an assistant cashier.

The evidence discloses that the transactions by the Farmers' & Merchants' Bank with the appellant commenced in the early part of the year 1930; that the loans made by the appellant to the Farmers' & Merchants' Bank were exceedingly large; that the business transactions continued without interruption down to the closing of the latter bank in December, 1931; that commercial paper of the Farmers' & Merchants' Bank was continually being forwarded during that period of time to the appellant, some by way of substitution for other maturing paper; that the inferences fairly to be drawn were that the directors (even if it was necessary to bind the debtor bank for them to know such facts) must have known of these transactions, and ratified the same.

■ Again it appears that, while the note sued on was not indorsed by the assistant

cashier and transmitted to the appellant bank until just a few days before the debtor bank closed its doors, the evidence leaves no room to doubt that this note was but a renewal of a former note which had been pledged by the Farmers' & Merchants' Bank to the appellant to secure the payment of the indebtedness of Farmers' & Merchants' Bank to appellant; that the original pledged note matured on November 15, 1931, and on that date appellant returned the note to the payee bank for *collection or renewal.* Thus it would appear that the Farmers' & Merchants' Bank last came into possession of the original note as the agent, and agent only, of the Hamilton National Bank under specific instruction, which it was bound to observe. When the renewal note was executed, and being made payable to the Farmers' & Merchants' Bank, it became the duty of that bank to forthwith indorse the same and send it forward to its principal. To have done otherwise would have been a dereliction of duty, amounting to a conversion.

It remains to be said that, while the cashier may not pledge the assets of a bank to secure an antecedent debt of the bank, as held in the case of Montgomery B. & T. Co. v. Walker, 181 Ala. 368, 61 So. 951, there was evidence in the case tending to show that, when the loan was made to Farmers' & Merchants' Bank by the Hamilton National Bank, it was agreed that the debtor bank would maintain its indebtedness collateraled in the amount of $2 to each dollar of the indebtedness. This was, of course, a legal and binding obligation, and the duty rested upon the debtor bank to faithfully observe the terms of the contract. There was also evidence tending to show that the indebtedness was extended and renewed from time to time; that, as pledged obligations would mature, the same were returned to the debtor bank, and it was allowed to substitute other obligations, leaving the fair inference that the debtor bank was allowed to avail itself of the collections made on the falling due securities; and that the note in question was so handled.

If the original note was pledged to the Hamilton National Bank at the time the original indebtedness was contracted, or if it was pledged to the said bank in order to secure an extension of the indebtedness, or if it was pledged to creditor bank by way of substitution for other pledged paper falling due, or if it was pledged to comply with the agreement to keep the indebtedness collateraled in an amount of $2 to each dollar of the indebtedness, and if the original note was thereafter returned to the debtor bank for collection or renewal, and, after it was renewed, it was then indorsed by the debtor bank and returned to appellant, the appellant would be entitled to recover in this action.

Under the evidence, the defendant was not due the affirmative charge. Such charge should never be given where the evidence supports a reasonable inference of facts unfavorable to the party requesting it. Alaga Coach Line v. McCarroll, 227 Ala. 686, 151 So. 834, 92 A. L. R..470; Byram & Co. v. Livingston, 225 Ala. 442, 143 So. 461; McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Southern B. & L. Ass'n v. Bryant, 225 Ala. 527, 144 So. 367; Alaga Coach Line v. Foy, 227 Ala. 506, 150 So. 493.

It follows that the judgment appealed from must be reversed, and it is so ordered, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.