186 So. 704

**DE MOVILLE et al. v. MERCHANTS & FARMERS BANK OF GREENE COUNTY.**

2 Div. 122.

Supreme Court of Alabama.

Jan. 19, 1939.

Rehearing Denied Feb. 21, 1939.

350

McQueen, McQueen & McQueen, of Tuscaloosa, E. F. Hildreth, of Eutaw, and Knox, Acker, Sterne & Liles, of Anniston, for appellee.

J. F. Aldridge, of Eutaw, and Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellant.

FOSTER, Justice.

This is a second appeal in the case. See 233 Ala. 204, 170 So. 756, for the facts as presented on that appeal.

The court there held that the foreclosure by the bank of a certain mortgage there described embracing real and personal property was irregular, and vacated it and declared the existence of the equity of redemption rather than the statutory right of redemption.

On remand, the trial court undertook to observe the mandate of this Court and ordered a reference to the register to state the account and ascertain the amount due on the mortgage. There was a reference and report, exceptions to it, and confirmation by the trial court, and final decree allowing complainant to redeem, and fixing the amount necessary to be paid by complainant to do so. Complainant not being satisfied with the amount so fixed has prosecuted this appeal.

We will treat the matters argued by appellant in brief in the order there stated: confining ourselves of course to such only as are thus presented. We will not here make a general statement of facts necessary to an understanding of each contention, but will do so as we treat each of them.

The first is based on objection made by complainant to the appointment of the register as the master to hold the reference and report, and his motion to appoint a special master on account of the disqualification of the register. The grounds of the objection and motion, which we need to mention, are that the register is related within the fourth degree to some of the stockholders of respondent bank, including J. O. Banks who is also its president and a director; that the register is a customer and depositor in said bank, and closely associated with said bank in business matters, has investigated or informed himself with reference to certain phases of this controversy and hence is apt to be biased in favor of respondent bank.

On hearing that motion, the evidence showed that the first wife of J. O. Banks was his own cousin, and the first cousin of the register. They had three sons still living and at least one of them and Mr. J. O. Banks were stockholders and directors of the bank, and that J. O. Banks was its president. That the grandfather of the register was a brother of the mother of J. O. Banks. The effect was that J. O. Banks and the father of the register were first cousins, and that he and the register were second cousins by consanguinity and first cousins by affinity. Pegues v. Baker, 110 Ala. 251, 17 So. 943; Morey v. Monk, 145 Ala. 301, 40 So. 411; Tagert v. State, 143 Ala. 88, 39 So. 293, 111 Am.St.Rep. 17. He was likewise a second cousin to the sons of J. O. Banks, through the relationship of their mother.

There was no evidence tending to show actual bias, except such as might be inferred from the fact of relationship, and that the register was a depositor and customer of the bank and has served as register throughout the proceedings in this cause, and thereby became familiar with what has occurred in its progress.

The question of alleged disqualification of a judicial officer has two aspects: (1) The mandatory provisions of chancery rule 6 and section 8570, Code; and (2) whether there were circumstances showing a probability of bias or other personal status of unfitness in fact to serve as register. Rule 6, supra, disqualifies the register when he is related to the parties within the fourth degree of consanguinity or affinity. This is mandatory, and does not appeal to the discretion of the court. As a second cousin he was related by consanguinity to J. O. Banks and his sons in the fifth degree. Mostilla v. Ash, 234 Ala. 626, 176 So. 356; Cambron v. State, 227 Ala. 575, 151 So. 443. The relation of first cousin is in fourth degree. By that he was related to J. O. Banks by affinity. Though his wife was dead, she had living children. So that if J. O. Banks stands in the attitude of a party to the suit, and the right was not waived, the register should not have been appointed master to hold the reference. We do not think it was waived. Rule of

Chancery Practice No. 6, supra, does not, as does section 8570, Code, provide that the parties may consent to a trial before the disqualified officer only by matter of record or in writing.

■ In our case of Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565, we had occasion to consider the nature of consent under section 8570, supra. We there pointed out that that statute changes the general rule in that respect which otherwise obtains. Under the general rule there cited, applicable to the register here, if the facts are known the parties are bound to make objection before issue joined, and before the trial commences, otherwise they will be deemed to have waived the objection.

■■ Rule 6, supra, has application to the register in the performance of any sort of service as such. If he is disqualified by relation to a party, and the objection is sought to be made available as applicable to his service generally, it should be made promptly when known to the parties. But the failure to do so, when the suit is begun, should not preclude the objection when he is specially appointed as a master to act in some judicial capacity, which is not a part of his duties otherwise. When such authority is conferred on him, it is a new appointment, then effective, and then is the time to pass on his qualifications for that particular service. State ex rel. McKleroy v. Benners, 185 Ala. 350, 64 So. 308.

The objection was duly made, and was not waived nor consent given.

■ What is the proper remedy? The general rule is that when some preliminary matter is available relating to something that is waived unless presented properly and in due time, if it is so presented and the contention overruled by the court, it is not lost by proceeding on other grounds of defense, and may be assigned as error on appeal from the final judgment. 49 Corpus Juris 244, section 312.

■ It is also the rule·in equity that adverse interlocutory decrees may be assigned for error on appeal from the final decree though they are such as that no appeal is specially provided as to them. Bell v. King, 210 Ala. 557, 98 So. 796; O'Rear v. O'Rear, 227 Ala. 403, 150 So. 502; Sims Chancery Practice, section 583, note 4; Carter v. Mitchell, 225 Ala. 287, 142 So. 514.

■ There is also a principle that when pending a proceeding a ruling is made which is important in shaping the further progress of the case, so that the ends of justice would be better served by a review of it before proceeding further, and no provision for appeal is made, it may be reviewed by a petition to this Court for mandamus. Jones v. Wright, 220 Ala. 406, 125 So. 645; Ex parte Fletcher, 225 Ala. 139, 142 So. 30; 2 Alabama Digest, Appeal and Error, page 380, ⬤�longⒹ10.

■ This has been the usual method of reviewing a ruling upon the qualifications of the register or other judicial officer. State ex rel. v. Benners, supra; Ex parte State Bar Ass'n, 92 Ala. 113, 8 So. 768, 770; Medlin v. Taylor, 101 Ala. 239, 13 So. 310; Crook v. Newborg, 124 Ala. 479, 27 So. 432, 82 Am.St.Rep. 190; Bryce v. Burke, 172 Ala. 219, 55 So. 635. Many other cases are cited in Woodmen of the World v. Alford, 206 Ala. 18, 22, 89 So. 528, holding that mandamus is the proper remedy under such circumstances; and this case is cited on that point in Lindsey v. Lindsey, 229 Ala. 578, 158 So. 522. In those two cases, the question was raised on appeal. The Alford Case, supra, was reversed on other grounds, and the Lindsey Case, supra, was affirmed on the merits of the question. They do not hold, and no case apparently has held, that mandamus is the only remedy, when the question is properly presented and overruled. We think the ruling may properly be here assigned as error. This has been done.

We therefore proceed to a consideration of the merits of that question.

Under the rule 6, the register must not be *interested* in the subject matter of the suit. It is often stated that such interest must be direct and immediate to disqualify a judge. Ellis v. Smith, 42 Ala. 349, 353; Collins v. Hammock, 59 Ala. 448, 452; Woodmen of the World v. Alford, supra. The cases cited relate to the statutory qualification. But though he may not be disqualified by reason of such interest under the statute, any interest may, with other circumstances be such as naturally and probably create a bias which at common law also disqualified a judicial officer. Mobile v. Grayson, 220 Ala. 349, 125 So. 221; Ex parte Cornwell, 144 Ala. 497, 39 So. 354.

We are not here concerned with the interest of the register which will disqual-

ify him for he has no interest in the subject matter of the suit, direct or remote.

But under the statute and rule, the register is disqualified if he is related by consanguinity or affinity *to a party to the suit.* While he is not related to a person who is technically a party to the suit, he is related to Mr. J. O. Banks by affinity within the prohibited fourth degree. The first question then is whether Mr. Banks stands in the attitude of a party because he is a stockholder and president of a corporation which is directly interested.

This Court has considered the nature of interest which will make one not a party stand in such attitude within the meaning of the statutes in question. In Crook v. Newborg, supra, it was held that the surety on the bond of an administrator has such a right and is so liable in respect to the proceedings in the probate court for the settlement of the estate, that he is directly and immediately interested in the proceeding and its subject matter; that when the judge is related to him, it is as to a party to it in name. And in Gulf States Steel Co. v. Christison, supra, we also considered the question in the light of Crook v. Newborg, supra. We there held that such third person to stand in the attitude of a party so that relation to him will disqualify a judge he must have an interest, meaning direct and immediate, in the subject matter of the suit; that if he is interested in matter not involved in the suit, but affected by the event of its determination and the result thereof, he does not so stand in the attitude of a party as to disqualify a judge who is related to him under the statute.

So that under the statute the question is whether Mr. Banks has a direct and immediate interest in the subject matter of the suit because he is a stockholder and its president. We do not think the statute was intended to be broad enough to apply to all instances of such relation by a judge to a stockholder in a corporate party. That interest is too remote and unsubstantial to fix a rule applicable to all such cases of relationship. It would so hamper the work of courts that this could not reasonably be supposed to have been intended. The authorities seem generally to sustain that view. See 33 Corpus Juris 1008; 15 R.C.L. 533.

But the situation is different when such stockholder is also a director and president, especially when the president

has active duties. Mr. Banks was shown to own seventy-five of the five hundred and fifty shares of stock, and as president was engaged two hours in the morning of each day to its business. True, the power which a president is presumed to have is limited (Chemical National Bank v. Jackson, 214 Ala. 458, 108 So. 53; Montgomery Bank and Trust Co. v. Walker, 181 Ala. 368, 380, 61 So. 951), and the cashier is the presumed chief executive officer. Hamilton National Bank v. Lerman, 229 Ala. 363, 157 So. 75.

But the entire management is under the supervision of the directors, and the president is presumed also to have supervisory authority which tends to create a keen personal interest. 9 C.J.S., Banks and Banking, 223, et seq., § 117, 7 Amer.Jur. 166 et seq. and 178 et seq; First National Bank v. Fidelity & Deposit Co., 145 Ala. 335, 40 So. 415, 5 L.R.A.,N.S., 418, 117 Am.St.Rep. 45, 8 Ann.Cas. 241.

We cannot overlook that interest and natural desire for the success of every detail of the operations of the bank, which has a natural and probable tendency to cause a feeling of interest by a judicial officer related to him in the prohibited degree which is sufficient to disqualify him to act in matters of importance to the bank in which his relative is thus interested. The conclusion which we have reached is that the register was here disqualified and should not have been appointed master to state the account between the parties.

But both parties seem to desire a final disposition of this litigation without remanding it for another reference. The court has a discretion in the first place whether a reference will be ordered. Thomas v. Barnes, 219 Ala. 652, 123 So. 18; Dudley v. Colonial Lumber Co., 223 Ala. 533, 137 So. 429. And when the evidence is all in and neither party wishes to submit more, and does not seek a new reference, there is no reason apparent to us why there should be another. The trial court could determine the question on setting aside the reference, and we see no reason why we cannot do so. No objection is made to that procedure. Richardson v. Horton, 139 Ala. 350, 35 So. 1006; People's Savings Bank v. Union Bank & Trust Co., 204 Ala. 406, 85 So. 694; Sims Chancery Practice, section 598.

While under such circumstances we must set aside the register's report on account

of his disqualification by reason of relationship to Mr. Banks, we will proceed to ascertain the amount necessary for complainant to pay to effect his equity of redemption of the real estate contained in his mortgage. In order to do that we think it advisable to use the statement of the account made by the register and build upon it as a foundation for our own findings.

Appellant objects to certain items, one of which relates to the failure to charge the bank with ten bales of cotton as rent for the land instead of six and one-half bales received by it from Banks and Company to whom it rented the land and to whom it sold the accounts of his tenants. In order to secure the amount of ten bales Banks and Company had to advance them as well as take over their unpaid accounts. Considering this as a part of the entire picture, we cannot say that complainant should be credited with more than the six and one-half bales which are shown by the account made by the register.

Other items of objection relate to repairs and rent of the store house at Boligee. These have likewise been examined, and, in our opinion, the account made by the register reflects the correct situation in that respect.

It is also objected that interest was so calculated as to be compounded in effect. But we find it was all computed in accordance with the requirements of section 8566, Code. Under it, when a partial payment is made, interest on the principal is due to be calculated to that date, and the payment first applied on the amount of the interest. If that is overpaid, the balance is applied on the principal. In that event, there is no prejudice in adding the interest to the principal and subtracting the payment, since the balance would under that rule all be principal. If the payment is less than the interest, it is applied to the interest, and the balance is an amount of interest to be added to the next computation of interest on the same amount of principal. Vaughan v. Smith, 69 Ala. 92; McQueen v. Whetstone, 127 Ala. 417, 30 So. 548; 33 Corpus Juris 256.

The contention is made on cross-appeal by appellee that by virtue of the terms of the note made before the approval of the Act of February 9, 1935 (General Acts, page 69), the rate of interest is stipulated to continue at eight per cent. until the debt is paid. The note provides that the principal sum is payable on October 1, 1931, with interest from date. Cross-appellant argues that since eight per cent. was then the legal rate, that means to agree to pay at that rate until the debt is paid.

We agree with the contention that a stipulation to pay interest means at the then legal rate, if the rate is not otherwise stated. 33 Corpus Juris 218. And that a change in the law in that respect does not serve to change the effect of a contract for a different rate, so long as the contract rate is effective. Bryan v. Moore, Minor 377; Barrington v. Barrington, 200 Ala. 315, 76 So. 81. But we have held that a note with a stipulation such as above stated means to express an agreement to pay interest at the rate then legal from date to maturity, the same as if the note had expressed the rate to be at eight per cent. until then. But after maturity the agreement is not binding to fix the rate since it is not stipulated to be at that rate till paid. Zimmern v. Standard Motor Co., 205 Ala. 580, 88 So. 743; Davis v. Anderson, 224 Ala. 400, 140 So. 423. So that the change of the legal rate effective February 9, 1935, does not impair the obligations of the note here in question, and we cannot sustain this contention of appellee.

### Value of the Mortgage Accounts.

The bank had as collateral security about one hundred or more mortgages which had been given to appellant to secure advances he had made to them in the operation of his advancing business at Boligee. They were sold by the bank to Banks and Company for $1600, and there was an additional sum of $250 they had to pay as a preferred claim on some.

The bank had offered to sell them to appellant for $2,000, and also to his mother, shown to be well able to buy them. They did not buy them at that price, and made no offer. They were then offered to other advancing merchants to no avail, and finally sold to Banks and Company, as we have stated.

The mortgages in question were given by negro tenants to appellant to secure advances to make a crop, in the main renting land from others. They were secured by the crop and live stock. All the crop had been sold and applied on the debt except some feed for the stock. So that then each was secured only by the live stock and feed on hand. The debtors were wholly unable to pay the debts, except by the use of the property embraced in the mortgages.

As a personal obligation, they were then without value, except as incidental to further advances. The negroes were shown to be average, hardworking, substantial farmers, without assets or the means of paying debts, except upon the hazard of another crop.

The witnesses for the bank gave estimates of their value based upon the replacement value of the property on hand covered by the mortgages as the controlling factor. However, they also considered the prospects of making collections by making additional advances to them on a new contract, and the chances of making enough to pay the new advances and something on the old debt. They did not give much value to that prospect. The only value for practical purposes of the present worth of the mortgages to appellant or to Banks and Company was thought to be the present replacement value of the remaining property in the security.

On the other hand, the witnesses for appellant gave substantial present value to the intangible aspect of the security. The difference in the estimates seems largely to depend upon such intangibles and the amount of value, if any, thereby added.

Would the debtors rent the land for another year, make a new mortgage for advances to make the crop, work it satisfactorily, make a fair crop, get a fair price. and realize enough to pay the rent and the new advances and then the old debt? If this could be anticipated on a substantial basis, there would be little hazard in making correct estimates. But the contingencies enumerated depend upon such uncertainty, that the risk was large. For practical purposes, many witnesses did not attach substantial value to such contingencies. At that time (Spring of 1932), cotton was worth five to six cents per pound, whereas in the Spring of 1931, it was worth nine to ten cents. Everything related to cotton farming was in a state of demoralization. It could not be predicted whether cotton could be grown that year at a profit.

██ Upon the basis of the present worth of the securities in January 1932 to appellant or anyone else, the weight of the evidence sustains the view that they were worth approximately $4,000. The register allowed $3975, and we will not change that figure as the result of our finding.

Appellant also contends that the register was in error in allowing credit for only *$2300 for sixty shares of the corporate stock in a gin company,* sold by the bank for his account and for credit on the mortgage debt.

The evidence shows that when the bank offered this stock at public outcry for cash at foreclosure sale, there was a good bid on it of $2300. But this was rejected in the hope that more could be realized. The next day the bidder refused to increase his bid to $2400. Finally the bank made a private sale on credit to Bouchelle for Greene County Gin and Cotton Company for $4500, provided the bank would lend the purchaser the additional sum of $6,000. None of the purchase money was shown to have been paid at the time of the last appeal. Since that time amounts have been paid by sale of a part of the machinery for $3800, and some small interest payments.

The bank then, on March 15, 1937, sold its mortgage including all the security it had on the Bouchelle transaction, to the Buckeye Cotton Oil Company for the sum of $4500, which they claim was its then reasonable value. The net result was that the bank received $2030.83 for the purchase price of the gin stock, according to its calculation and contention.

Upon the theory that the bank could have sold the stock for $2300 on the bid at public auction, the register credited appellant with that amount. On the former appeal this Court was not passing on the proper credit to be allowed for the gin stock. It did not then so determine. That question was involved on the reference which was later held by the register. Evidence on it was again produced before the register on such reference. We have given it careful consideration without presumption in favor of the register's finding.

██ The full amount collected on such credit sale must be accounted for by a mortgagee who makes such a sale. If the mortgagee is willing to take the risk and responsibility of a credit sale burdened with a loan of new money necessary to negotiate it, in the hopes of obtaining more than was then available for cash, he should be chargeable with the full amount collected on such credit sale, not less than its cash value when sold, fixed at the amount of the bid offered at such sale. See Farmers' Sav. Bank v. Murphree, 200 Ala. 574 (4), 76 So. 932; State v. Woodward, 208 Ala. 31, 93 So. 826; Mewburn's Heirs v. Bass, 82 Ala. 622, 2 So. 520; Williams v.

Hatch, 38 Ala. 338, 341(3). Without making detail of interest calculations we understand that in order to leave a net balance unpaid of $2030 out of $10,500, there was paid on the principal of it approximately $8470. We think that by reason of the trust relation existing between the parties and the exercise of the utmost good faith by a trustee required by law, the additional sum of $6000 should not be treated as fully paid before applying any of it to the purchase price of the stock. When the bank rejected a good bid of $2300 in the hopes of making a better sale, that fixed the minimal credit on that account. But when the bank took a long and hazardous chance of getting a better price in the interest of appellant, there was a duty by the trustee as such in that connection. While it would not be equitable to compel him, under those circumstances, to apply his collections first to the sale price of the stock until that be finally paid, neither would it be equitable to permit him to apply them to the payment of his advances to the purchaser until they shall be first fully paid.

It seems to us to be right under the circumstances to make the computation on the theory that the net amount paid on the total principal should be prorated between the amount thus advanced by the bank and the amount of the purchase price of the gin stock, but provided that in no event should the collection on the price of the gin stock be reduced below the bid of $2300. Upon that basis, we make the computation as follows: The advance of $6000 should be credited with $60/105 = $4/7$ of $8470, collected = $4840. The purchase price of the gin stock should be credited with $45/105 = $3/7$ of $8470 = $3630.00.

Upon that basis the bank should credit appellant with $3650 instead of $2300, which was credited by the register as of January 29, 1932. The result is that an additional credit as of that day should be made in the sum of $1330 and interest computed on that allowance at eight per cent. from January 29, 1932, to February 9, 1935; at six per cent. from February 9, 1935, to June 8, 1937.

The register allowed an attorney's fee to the bank of $2112.88, which is ten per cent. of the debt due in the fall of 1931. The note secured by the mortgage here in question contained an obligation to pay a reasonable attorney's fee for its collection if it is not paid when due, and it is placed in the hands of an attorney for collection. There is no provision in the mortgage to justify an attorney's fee for defending this suit more favorable to the bank in this connection than the feature of the note to which we have referred.

At the time the original bill in this case was filed, the notes and collateral had been placed in the hands of an attorney for collection with an agreed fee of $750 for his services. The bill offers to pay the mortgage debt as it stood when it was filed. This includes the $750 which had been agreed on. But the mortgagee is not entitled to an attorney's fee for any services not incurred at the time the bill was filed in which an offer was made to pay the amount of the mortgage debt in a proceeding such as this which seeks to exercise the equity of redemption. This has been repeatedly asserted by this Court. See Kelly v. Carmichael, 221 Ala. 371, 129 So. 81; Beasley v. Ross, 234 Ala. 335, 174 So. 764; Bishop v. Swift & Co., 234 Ala. 326, 174 So. 488, citing many other cases.

The fee of $2112.88, allowed by the register, was too much by the amount of the difference between that sum and $750, which is $1362.88. So that there should be a deduction of that amount from the sum ascertained by the register. But it does not affect the computation of interest, as none was so made by the register, as was manifestly proper.

The final decree contained the following provision: "In the event complainants shall make payment as specified in paragraph two hereof and in the event the parties hereto shall not be able to agree upon and adjust between themselves all items accruing between June 8th, 1937, and the date of said payment constituting debits and credits, or either, in the way of rentals received or due to be received, taxes, insurance, repairs, interest, adjustments, and any and all other proper items of debit and credit, or either, then upon the application of either party made within thirty days after such payment, the court will determine the debits and credits accruing since June 8th, 1937, and in the event the accruals so determined by the court in response to such application shall constitute a balance in favor of complainants, respondent shall immediately upon such ascertainment by the court pay such balance to the register of this court for the benefit of complainants. If the said items so determined by the court in response to such

application shall constitute a balance in favor of the respondent, then complainants shall immediately upon ascertainment by the court of the amount thereof shall pay such balance to the register of this court for the benefit of the respondent; and for the security of any such balance which may be so ascertained by the court to exist in favor of respondent a lien upon the real property described in the said mortgage is hereby reserved to and vested in the said respondent."

Appellant was allowed ninety days after the decree to pay the amount ascertained to be due as of June 8, 1937, of $12,492.-12, as affected by the provisions of paragraph three, supra, and in default thereof the court decreed a foreclosure sale.

The amount fixed by the court of $12,-492.12 should be credited with $1330, with interest, on account of the gin stock, and $1362.88 without interest on account of the attorney's fee.

| | | |
|---|---|---|
| Balance shown on final decree..... | | $12492.12, |
| Less credit for gin stock........... | $1330.00 | |
| Interest at 8% from Jan. 29-32 to Feb. 9, 1935....................... | 328.07 | |
| Interest at 6% from Feb. 9-35 to June 8, 1937..................... | 186.20 | |
| Credit by excess attorney's fee.... | 1362.88 | |
| | $3207.15 | 3207.15 |
| | | $ 9284.97. |

We do not think it is necessary to discuss other matters argued in briefs.

The amount so fixed is subject to adjustments provided in the final decree as set out in paragraph three, supra.

The decree of the circuit court is reversed in so far as it confirms the register's report as modified and fixes $12,492.12 as the amount to be paid as of June 8, 1937, and a decree is here rendered in that respect fixing $9,284.97 as the amount to be paid as of that date subject to the adjustments provided in paragraph three, supra.

Appellant is allowed ninety days in which to pay the same, and in default of which the foreclosure sale will proceed as ordered in the final decree.

Except as here indicated the decree is affirmed at the cost of appellee.

Affirmed in part and in part reversed, rendered and remanded.

GARDNER, THOMAS, and BOULDIN, JJ., concur.

## On Rehearing.

FOSTER, Justice.

Appellant urges us to make response to his contention that he has a right under section 10428, Code, to follow the notes and mortgages into the possession of Banks and Company, as trustees in invitum, and hold them responsible for whatever sums have been realized by them out of such assets.

This Court on former appeal agreed with the decision of the lower court in holding that in making such sale to Banks and Company there was no fraud or conspiracy sufficient to vacate the sale to them on that ground, and affirmed the decree insofar as Banks and Company were discharged from liability on account of that transaction. That ought to be an end to that question. But we will amplify that opinion to meet the urgent appeal of appellant on rehearing.

When the sale was made to them there was a default in the payment of the mortgage debt, and the mortgagee had the right to sell those assets in foreclosure of the mortgage. There was no occasion to claim that the sale be set aside except on account of fraud or conspiracy, heretofore decided against appellant, or inadequacy of the purchase price.

It was pointed out in Harmon v. Dothan National Bank, 186 Ala. 360, 64 So. 621, that after default the legal title of the mortgaged personalty is complete in the mortgagee, and foreclosure does not add to that title, but cuts off the equity of redemption. And a sale by the mortgagee privately made is not a conversion, and does not exceed his power to convey the property. And that inadequacy of price paid by the purchaser at a foreclosure sale will not of itself, even in a court of equity, invalidate or affect the sale—at page 371, 64 So. 621 citing Ward v. Ward, 108 Ala. 278, 19 So. 354; Hunter v. Mellen, 127 Ala. 343, 348, 28 So. 468; Windes v. Russell, 150 Ala. 625, 43 So. 788; Hayden v. Smith, 216 Ala. 428 (6), 113 So. 293.

It may be one circumstance material on the question of fraud, but it is not enough taken alone. But that when the mortgagee has exercised a power to sell personalty by a private sale he is chargeable upon a bill for redemption of the balance of the property with the reasonable value of that sold regardless of the price actually received, citing Zadek v. Burnett, 176 Ala. 80, 57 So. 447.

■ In the instant case, the mortgage authorized a sale of this property at any time and place with or without notice, publicly or privately. The sale was made after default and privately without published notice. So that in the absence of fraud or conspiracy participated in by the purchaser, he received a good title to the property and became its complete and unconditional owner. Marsh v. Elba Bank & Trust Co., 221 Ala. 683, 130 So. 323.

■ Section 10428, Code, relied upon by appellant only applies when the sale made by the trustee does not pass to the purchaser complete ownership of the property, free from the claims of the beneficiary. It is no more than a codification of a principle which has long prevailed in equity.

In this case the validity of the sale was adjudicated on the former appeal. The only question now is whether the court has allowed appellant proper credit for the value of the personalty thus sold. We responded to that question on this appeal, and nothing has been suggested on this application which satisfies us of any error in that respect which entered into our former opinion. We thought then that it was unnecessary to repeat the principles of law to which we have here referred.

Appellant also insists that we did not respond to his contention in respect to interest on payments for taxes and repairs made by the mortgagee of real estate in possession, when he is also collecting rents. He objects to the computation, by making the following statement as to the manner in which it is done: "The way the account is stated by the register, the income was immediately applied in reduction of delinquent interest on the mortgage debt, and each item of expenditure was immediately added to the principal of the mortgage debt. This results in no interest being charged to the bank on the income account for the several years in question, but on the other hand, interest was charged against De-Moville on disbursement for taxes, insurance and upkeep, from the date each item was expended." On that subject it is said of a mortgagee in possession before foreclosure in the case of Mahone v. Williams, 39 Ala. 202, at pages 220, 221, that: "The chancellor, in his decree settling the principles upon which the account should be taken, directed the register to charge the mortgagee with the hire of the slaves from the commencement of his possession, and to make annual rests, and appropriate the annual hire, first, to the discharge of the interest, and then to the reduction of the principal. * * * The chancellor has followed the general rule, which governs in taking an account between mortgagor and mortgagee, and which is consistent with our statutory mode of computing interest; and he certainly committed no error.— Code, § 1522; 3 Powell on Mortgages, 956, 957, 958, and notes; 1 Hill on Mortgages, 424, 420; Shephard v. Elliott, 4 Mad.R. 254; Quarrel v. Beckford, 1 Mad.R. 269, 274. The question has been between allowing no interest on the annual profits, and computing interest upon the plan adopted by the chancellor. It seems never to have been supposed that a mortgagor had any cause of complaint, where the chancellor's mode of computation was adopted."

The register in the instant case did exactly that thing. The contention now is that the rents should have been applied to the payment of repairs and taxes before they should be credited on the interest calculated on the principal to that date.

■■ But when a mortgagee before foreclosure is in possession and pays for taxes, insurance and repairs, he is in the attitude of paying out money due to be paid by the mortgagor, which amounts add that much to the mortgage debt. Fidelity & Deposit Co. v. West Blocton Sav. Bank, 216 Ala. 465, 113 So. 489. And it is explained in 19 R.C.L. 332, note 2, that he is entitled to interest on such amounts. And to the same effect is Pollard v. American Freehold L. Mortgage Co., 139 Ala. 183, 207, 35 So. 767. Interest is but a just compensation for the withholding of the principal, and when that is due and is unpaid interest follows as an incident. Whitworth v. Hart, 22 Ala. 343.

■ We do not think the mortgagor on those principles can complain because interest on the amount of such payments was computed to the date of the next credit, whether received from rents received or from other sources, and then added to the interest calculated on the balance of the principal making an amount of total interest then chargeable on which the credit is first applied, before it is applied to the principal or any part of it.

Application for rehearing overruled.

All the Justices concur, except that GARDNER, THOMAS, and BROWN, JJ., are of the opinion that appellant should have credit for $4500 instead of $3630, on account of the gin stock transaction.